CONFIDENTIAL – FILED UNDER SEAL – ATTORNEYS' EYES ONLY

Peter D. Morgenstern (PM-5021)
Mark R. Jacobs (MJ-6248)
Gregory A. Blue (GB-9569)
Eric B. Fisher (EF-1209)
Andrew L. Buck (AB-4298)
MORGENSTERN JACOBS & BLUE, LLC
885 Third Avenue
New York, New York 10022
Tel. (212) 750-6776

*Attorneys for the Official
Committee of Equity Security Holders*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 Cases |
| Adelphia Communications Corporation, <u>et al.</u>, | Case No. 02-41729 (REG) |
| Debtors | (Jointly Administered) |

---------------------------------------------------------x

## Official Committee of Equity Security Holders' Hearing 4 Reply Memorandum

TO THE HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE

The Official Committee of Equity Security Holders (the "Equity Committee") of Adelphia Communications Corporation ("ACC"; collectively with the other above-captioned debtors and debtors in possession, the "Debtors" or "Adelphia"), by its undersigned attorneys, hereby submits this Reply Memorandum with respect to the issues to be adjudicated in Hearing 4 in accordance with the Court's Order in Aid of Confirmation, Pursuant to Sections 105(a) and 105(d) of the Bankruptcy Code, Establishing Pre-Confirmation Process to Resolve Certain Inter-Creditor Issues, dated August 4, 2005 (the "Order in Aid").[1]

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Equity Committee's Hearing 4 Pretrial Memorandum.

CONFIDENTIAL – FILED UNDER SEAL – ATTORNEYS' EYES ONLY

I.  **INTRODUCTION**

This Court should allocate the proceeds from the sale to Time Warner and Comcast in accordance with the respective values of the individual assets being sold.[2] While the Arahova Committee and Huff pay lip service to this goal, they fail to offer a credible approach to valuing the actual assets being sold, preferring instead to talk about the potential values of these assets in the distant future, after they are integrated into Time Warner and Comcast's existing cable businesses. The Court should not permit the Participants to flee from the hard facts of the sale transaction into some theoretical valuation universe. It is an invitation to endless mischief that, at the end of the day, will not yield a reliable result.

Any reliable allocation should derive from the facts of the sale transaction as expressed in the TW/C APAs. Although one would expect the TW/C APAs to serve as the cornerstone for each Participant's approach to the issue of value allocation, that is not the case. Instead, the Arahova Committee (joined by Huff) essentially ignores the data contained in the sale documents and advocates an entirely speculative approach that backs into the most favorable result for its constituents.

Because the Arahova Committee and Huff are not content with the facts of the sale transaction as they actually are, the Arahova Committee and Huff purport to gaze into their crystal ball, basing their allocation instead on "potential future growth, potential cost savings and synergies" to be realized ten years hence.[3] Rather than allocate the actual sale consideration, the Arahova Committee and Huff essentially purport to allocate future benefits that Time Warner and Comcast may or may not realize from this strategic acquisition. Built into these long-term

---

[2]  *See In re LTV Steel Company, Inc.*, 285 B.R. 259, 267 (Bankr. N.D. Ohio 2002).

[3]  Hearing Four Opening Memorandum of W.R. Huff Asset Management Co., LLC ("Huff Brief") at ¶ 2.

2

CONFIDENTIAL – FILED UNDER SEAL – ATTORNEYS' EYES ONLY

projections about possible future benefits to Time Warner and Comcast are myriad highly contingent assumptions about matters large and small. As a result, as already set forth in the Equity Committee's Hearing 4 Pretrial Memorandum, the Arahova Committee's approach is particularly susceptible to outcome-driven manipulation.

In an extreme illustration of fleeing from the facts, both the Arahova Committee and Huff go so far as to argue that this Court's April 21, 2005 Supplemental Order (the "Supplemental Order") approving the TW/C APAs "mandates that the Purchase Agreements shall not be used to determine the allocation of the Sale Value."[4] Of course, the Order says nothing of the sort. It certainly does not require the Participants in the MIA process to hide their heads in the sand and ignore what should be the starting point for any value allocation method. Instead, the Order provides simply that the TW/C APAs shall not prejudice the parties' right to contest allocation.[5]

The evidence at Hearing 4 will show that Ms. Flynn has manipulated a set of highly subjective future assumptions to achieve an extremely inflated valuation of the Arahova assets. In contrast, the Equity Committee's approach, as set forth in the expert report and testimony of Randall Lambert, relies on the TW/C APAs, as well as other data available to the parties at the time that the sale transaction was entered into, to propose a value allocation that is grounded in fact and objectively verifiable.

---

[4] Huff Brief at ¶ 8; *see also* Hearing Four Trial Memorandum of the Ad Hoc Committee of Arahova Noteholders ("Arahova Brief") at 2 n.2.

[5] Supplemental Order at ¶ 7. Specifically, the Supplemental Order provides that "neither the definitive agreement nor the relief granted hereby shall prejudice or affect the rights, claims, or defenses of any creditor, in its capacity as such, with respect to the distribution or allocation amongst creditors and other stakeholders of any consideration received by the Debtors under or in respect of such definitive agreement, including, but not limited to, anything set forth in a definitive agreement with respect to the allocation of purchase price or the description of 'claims,' all of which rights, claims and defenses are preserved."

CONFIDENTIAL – FILED UNDER SEAL – ATTORNEYS' EYES ONLY

## II. ARGUMENT

### A. *Sale Proceeds Must Be Allocated in Accordance with the TW/C APAs*

As the Equity Committee described in its Hearing 4 Pretrial Memorandum, it is axiomatic that the best indication of any asset's value is the price a willing buyer would pay a willing seller to purchase that asset. The Asset Purchase Agreement Operating Cash Flow methodology does just that because it is based on the values ascribed to the Four Components derived from the TW/C APAs after an exhaustive sale process, run in good faith by the Debtors and their M&A Advisors.[6]

The Arahova Committee offers two basic critiques of Mr. Lambert's approach, neither of which has merit:

The Arahova Committee first argues that, in addition to the one-year management projections that he relies upon, Mr. Lambert should have used the Debtors' five-year OCF projections. However, because the one-year OCF projections are confined to the near term, they are inherently more reliable than five-year management projections (to say nothing of Ms. Flynn's ten-year projections), especially in the cable industry with its rapidly evolving technologies and market conditions. Moreover, because these assets are to be incorporated into two long-established cable businesses, with their own cost structures, during the five-year period covered by the projections, those projections, which assume that Adelphia will remain a stand-alone entity, are less relevant to determining allocation of the value of the business today.

The Arahova Committee also criticizes Mr. Lambert's method on the supposed ground that it does not account for differences in growth rates among the different assets. However, as already explained in the Equity Committee's opening memorandum, one of the chief advantages

---

[6] *See LTV*, 285 B.R. at 275 (a bid for a particular asset "offers the most timely and credible evidence of the asset's value because it was offered by a disinterested party, at the time of the sale").

4

CONFIDENTIAL – FILED UNDER SEAL – ATTORNEYS' EYES ONLY

of Mr. Lambert's approach is that it avoids the need to speculate about how these assets might perform in the distant future once they are combined with Time Warner's existing cable business.

Further, by deriving different OCF multiples for each of the Four Components, Mr. Lambert uses the data embedded in the TW/C APAs themselves to differentiate among the assets. This yields a more granular and differentiated valuation than the Debtors' single OCF multiple approach, without veering into the rampant speculation characteristic of the Arahova Committee's approach.[7]

### B. *The Court Should Reject the Arahova Committee's Speculative, Outcome-Based Approach*

The Arahova Committee has argued at length that discounted cash flow ("DCF") provides the most realistic picture of the future value of a business. DCF is not the right approach here, because it requires the examination of myriad assumed and unverifiable variables, including projected growth rates, expected synergies, and discount rates.[8] The Equity Committee's opening brief details specific flaws with Ms. Flynn's report, which the Equity Committee intends to demonstrate at the hearing itself. For example:

- Ms. Flynn constructed her own 10-year projections through 2015, despite the fact that no bidder relied on such calculations in formulating an offer.

---

[7] The Arahova Committee also notes that Mr. Lambert "ignores" future synergies to be achieved by the swap transactions whereby Time Warner and Comcast will exchange various assets, including those being acquired from the Debtors. These swaps are irrelevant to the issue of value allocation. Among other things, the TW/C APAs contemplate situations where those swaps will never take place, and Time Warner will acquire all of the assets itself. In such an event, the TW/C APAs specify exactly the amounts that Time Warner will pay for the additional assets, further proof that the agreements provide the most accurate indication of the value of the assets at the time the agreements were executed. *See* generally Lambert 98:2-133:6.

[8] As already explained at length in the Equity Committee's Hearing 4 Pretrial Memorandum and the Ad Hoc Committee of ACC Senior Noteholders' Hearing 4 Opening Brief, the Arahova Committee's expert, Robin Flynn, used particularly suspect data points in her DCF analysis, including generating her own 10-year projections. In the interest of brevity, the Equity Committee will not repeat that discussion here.

5

CONFIDENTIAL – FILED UNDER SEAL – ATTORNEYS' EYES ONLY

- Even in those years for which management projections were available, Ms. Flynn chose to adjust certain assumptions made by the Debtors in favor of her own estimates.

- Ms. Flynn conveniently ignores the fact that no individual bids were generated for Cluster D, which was substantially comprised of subscribers contained in Century-TCI, which are Arahova assets.

- Rather than use a uniform perpetuity growth rate, Ms. Flynn opportunistically assigns an arbitrarily higher rate to Arahova's assets, causing a swing in value of hundreds of millions of dollars in Arahova's favor.

Although DCF may be a legitimate valuation methodology in certain circumstances, and has been adopted by numerous courts in the absence of an actual sale transaction,[9] such an approach is inappropriate where, as here, there is an actual sale transaction that ascribes value to the individual assets. Indeed, of the handful of cases valuing assets for the purpose of allocating sale value, none employed DCF.[10]

---

[9] *See In re Valley-Vulcan Mold Co.*, 5 Fed. Appx. 396 (6th Cir 2001) (DCF used in solvency analysis in connection with a fraudulent transfer action); *Lippe v. Bairnco Corp.*, 288 B.R. 678, 689-90 (S.D.N.Y. 2003) (DCF was necessary as a "check" on an expert's speculative and unsupported business valuations in a fraudulent conveyance action); *In re Exide Techs.*, 303 B.R. 48 (Bankr. D. Del. 2003) (DCF, along with other methodologies, used in connection with plan confirmation to value common stock given as consideration to secured lenders in settlement of adversary proceeding); *In re Zenith Elecs. Corp.*. 241 B.R. 92, 103 (Bankr. D. Del. 1999) (DCF used in dispute over going concern value expressed in disclosure statement); *In re Cellular Info. Sys.*, 171 B.R. 926, 930 (Bankr. S.D.N.Y. 1994) (DCF used to determine going concern value of a secured lenders' collateral in contested confirmation).

[10] *See, e.g., LTV*, 285 B.R. at 266-278 (utilizing a variety of methods to value individual assets, including bids); *In re 26 Trumbull St.*, 77 B.R. 374 (Bankr. D. Conn. 1987) (adopting liquidation appraisal to determine value of secured lender's collateral); *In re Manningto Pottery Co.*, 104 F. Supp 506 (N.D. W.Va. 1952) (relying on property appraisal to apportion value); *In re Beardsley*, 38 F. Supp. 799 (D. Md. 1941) (utilizing real estate appraisals to apportion value between real and personal property); *In re Hetzel*, 23 F. Supp. 530 (D. Md. 1938) (property appraisals).

CONFIDENTIAL – FILED UNDER SEAL – ATTORNEYS' EYES ONLY

## III. CONCLUSION

For the reasons set forth above, the proceeds of the sale of the Debtors' assets should be allocated according to the methodology described in the Lambert Expert Report.

Dated: March 28, 2006
      New York, New York

                                        MORGENSTERN JACOBS & BLUE, LLC

                                        By:   /s/ Eric B. Fisher
                                                  Peter D. Morgenstern (PM-5021)
                                                  Mark R. Jacobs (MJ-6248)
                                                  Gregory A. Blue (GB-9569)
                                                  Eric B. Fisher (EF-1209)
                                                  Andrew L. Buck (AB-4298)
                                                  885 Third Avenue, Suite 3040
                                                  New York, New York 10022
                                                  Telephone: (212) 750-6776

                                        *Attorneys for the Official Committee*
                                        *of Equity Security Holders*