UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------
                                                    )
In re:                                              )    Chapter 11
                                                    )
Adelphia Communications Corp., *et al.*,            )    Case No. 02-41729 (REG)
                                                    )
                    Debtors.                        )    Jointly Administered
                                                    )
---------------------------------------------------------

BENCH DECISION[1] ON OPEN DISCLOSURE
STATEMENT ISSUES AND ON PROPRIETY OF
SUPPLEMENTAL SOLICITATION MATERIAL

APPEARANCES:

WILLKIE FARR & GALLAGHER LLP
Counsel for Debtors and Debtors in Possession
787 Seventh Avenue
New York, NY 10019-6099
By:   Paul V. Shalhoub, Esq. (argued)
      Morris J. Massel, Esq.
      Rachel C. Strickland, Esq.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
Counsel for the Official Committee of Unsecured Creditors
1633 Broadway
New York, NY 10019
By:   David M. Friedman, Esq. (argued)
      Adam L. Shiff, Esq.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
Counsel for the Official Committee of Unsecured Creditors
2121 Avenue of the Stars, 33rd Fl
Los Angeles, CA 90067
By:   Edward T. Attanasio, Esq.

---

[1]   I use bench decisions to lay out in writing decisions that are too long, or too important, to dictate in open court, but where time does not permit more extensive or polished discussion. Because they often start as scripts for decisions to be dictated in open court, they typically have fewer citations and other footnotes, and have a more conversational tone.

-1-

WEIL, GOTSHAL & MANGES LLP
Counsel for the Ad Hoc Committee of ACC Senior Noteholders
 ("ACC Bondholder Group")
767 Fifth Avenue
New York, NY  10153
By:     Martin J. Bienenstock, Esq. (argued)

700 Louisiana, Suite 1600
Houston, Texas 77002
By:     Sylvia Ann Mayer, Esq. (argued)

HENNIGAN, BENNETT & DORMAN LLP
Counsel for the Ad Hoc Committee of ACC Senior Noteholders
865 South Figueroa Street, Suite 2900
Los Angeles, CA 90017
By:     Bruce Bennett, Esq.

MORGENSTERN JACOBS & BLUE LLC
Counsel for Official Committee of Equity Security Holders
885 Third Avenue
New York, NY  10022
By:     Gregory A. Blue, Esq.
        Eric B. Fisher, Esq. (argued)

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Counsel for U.S. Bank National Association, as Indenture Trustee in Respect of the
Arahova Notes and the FrontierVision Notes
333 South Hope Street, 48th Floor
Los Angeles, CA 90071
By:     Mette H. Kurth, Esq.

SEWARD & KISSEL LLP
Counsel for Law Debenture Trust Company of New York, as ACC Senior Notes Trustee
One Battery Park Plaza
New York, NY 10004
By:     Arlene R. Alves, Esq.

Pg 3 of 19

WHITE & CASE LLP
Counsel for the Ad Hoc Committee of Arahova Noteholders
1155 Avenue of the Americas
New York, NY 10036-2787
By:   J. Christopher Shore, Esq. (argued)

FRIED FRANK HARRIS SHRIVER & JACOBSON LLP
Counsel for W.R. Huff Asset Management Co., L.L.C.
One New York Plaza
New York, NY 10004-1980
By:   Gary Kaplan, Esq. (argued)

HAYNES AND BOONE, LLP
Counsel for Bank of America, N.A., as Administrative Agent for the Century Cable Lenders
153 East 53rd Street, Suite 4900
New York, NY 10022
By:   Judith Elkin, Esq. (argued)

BRACEWELL & GIULIANI, LLP
Counsel for the Ad Hoc Committee of Non-Agent TCI and Parnassos Lenders
1177 Avenue of the Americas
New York, NY 10036
By:   David C. Albalah, Esq. (argued)

SIMPSON THACHER & BARTLETT LLP
Counsel for Wachovia Bank, N.A., as Administrative Agent for the UCA Lenders
425 Lexington Avenue
New York, NY 10017
By:   Peter Pantaleo, Esq.
      Elisha D. Graff, Esq.

GOODWIN PROCTER LLP
Counsel for Tudor Investment Corporation
53 State Street, Exchange Place
Boston, MA 02109
By:   Gina Lynn Martin, Esq.

599 Lexington Avenue
New York, NY 10022
By:   Allan S. Brilliant, Esq. (argued)
      Brian W. Harvey, Esq.

PACHULSKI STANG ZIEHL YOUNG JONES & WEINTRAUB P.C. LLP
Counsel for Murray Capital Management
780 Third Avenue, 36th Floor
New York, NY 10017
By:    Richard Pachulski, Esq. (argued)
       Dean Ziehl, Esq. (argued)

STUTMAN TREISTER & GLATT P.C.
Counsel for Elliot Associates (via telephone)
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
By:    Isaac Pachulski, Esq. (argued)

CLIFFORD CHANCE US LLP
Counsel for Calyon Securities
31 West 52nd Street
New York, NY 10019
By:    Andrew Brozman, Esq. (argued)

SCHULTE ROTH & ZABEL LLP
Counsel for Oz Capital Management
919 Third Avenue
New York, NY 10022
By:    Adam C. Harris, Esq. (argued)

CADWALADER WICKERSHAM & TAFT LLP
Counsel for Perry Capital, LLC
One World Financial Center
New York, NY 10281
By:    Kathryn L. Turner, Esq. (argued)

SIDLEY AUSTIN LLP
Counsel for the Fort Myers Noteholders
787 Seventh Avenue
New York, NY 10019
By:    Lee S. Attanasio, Esq.

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
Counsel for the Class Action Plaintiffs
460 Park Avenue, 8th Floor
New York, NY 10022
By:    John H. Drucker, Esq. (argued)
       Leonard Gerson, Esq.

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Counsel for the FrontierVision Ad Hoc Committee
1177 Avenue of the Americas
New York, NY 10036
By:   Kenneth H. Eckstein, Esq. (argued)

MILBANK, TWEED, HADLEY & MC CLOY LLP
Counsel for JPMorgan Chase Bank
One Chase Manhattan Plaza
New York, NY 10005
By:   James C. Tecce, Esq. (argued)

MILBANK, TWEED, HADLEY & MC CLOY LLP
Counsel for Citibank
One Chase Manhattan Plaza
New York, NY 10005
By:   Robert E. Winter, Esq.

KIRKLAND & ELLIS LLP
Counsel for ACC
777 South Figueroa Street
Los Angeles, CA 90017
By:   Richard L. Wynne, Esq. (argued)

WHITE & CASE LLP
Counsel for ABN AMRO Bank N.V.
1155 Avenue of the Americas
New York, NY 10036-2787
By:   Sarah Nye Campbell, Esq.

BEFORE:   ROBERT E. GERBER
          UNITED STATES BANKRUPTCY JUDGE

On Tuesday, I took under submission issues of two types, all matters of first impression, or largely so. Though they involve different considerations in material part, they both involve the upcoming debate between plan proponents and plan opponents as to the desirability of the plan, and the ways by which they can appropriately solicit

undecided creditors, particularly those of ACC Parent, to vote in favor of, or in opposition to, the plan.[2]

The first includes matter that the plan supporters wish to include in the disclosure statement. As relevant to arguments that the proposed settlement of the interdebtor disputes is unreasonable, they wish to comment on the difference (assertedly relatively small) between the settlement proposals embodied in term sheets put forward by ACC Parent Bondholders Committee, on the one hand, and its opposing constituencies, on the other. And in that connection, they wish to put forward the term sheets themselves, to establish the basis for such assertions.

The second includes matter that plan opponents and plan supporters wish to include in appendices to the plan, as their own submissions, urging rejections or acceptances of the plan, principally by the constituencies of which they are members. What is proper for inclusion in such appendices, which I'll call "Supplemental Solicitation Material," is a matter of sharp debate.

Neither side has put before me any caselaw on point, though there was some discussion of the one case that I invited the parties to address (the leading case in the solicitation of plan rejections area), which I'll discuss briefly below, even though it doesn't involve the issues we have here. As a practical matter, I have very little precedent to work with. Ultimately I have to make these decisions (as an exercise of discretion) based on my experience and understanding of the purposes of the solicitation process and the principles that underlie it; similarities to, and differences from, other presentations of information (as under the federal securities laws) and efforts to persuade

---

[2] Familiarity with my earlier decisions, shorthand discussions of constituencies and entities, and matters in this case (such as the MIA litigation) is assumed.

(as in court, and in the political process); interests in achieving a robust, but controlled, debate; and, most importantly, my interests in getting relevant, accurate, information to creditors, and fairness to both sides.

I'm going to first talk about potentially relevant statutory provisions, rules, and general principles, and then will talk about how I think they should be applied here. The latter will address, necessarily, undisputed or undisputable facts, which in material respects were misstated or omitted in presentations, and instances—far too numerous, in my view—where the disclosures failed to set forth other facts necessary to make what was said not misleading. While I won't rewrite the proposed Supplemental Solicitation Materials, I will note aspects of them that I consider acceptable and unacceptable.[3]

I recognize that, except for the disclosure statement itself, these are the creditor constituencies' pieces. Nevertheless, with the solicitation material having been put before me for approval, I won't countenance, much less bless, anything that I regard as false, misleading, or defamatory.

## I.

## General Principles

Different provisions of the Code govern disclosure statements themselves and any supplemental materials used in connection with the disclosure statements to solicit acceptances or rejections of plans.

As is fundamental, section 1125(b) of the Code provides that acceptances or rejections of a reorganization plan can't be solicited without first giving the creditors or

---

[3] Because Section III(B) below addresses non-public documents with respect to which public discussion would defeat the very purpose of this process, the public version of this document has been redacted, and the full version of this decision is being filed under seal. I'll hear any applications to unseal the redacted portions only after notice and a hearing.

others so solicited a court approved disclosure statement, which provides "adequate information."[4] But in a well known case, *Century Glove*,[5] the Third Circuit stated, among other things, that the "adequate information" requirement merely establishes a floor, and not a ceiling, for disclosure to voting creditors. And while *Century Glove* didn't involve or address a dispute on disclosure statement adequacy, I think that *Century Glove* tells us that once the "adequate disclosure" floor is satisfied, additional information can go into a disclosure statement too, at least so long as the additional information is accurate and its inclusion is not misleading. There may be other reasons why particular matter shouldn't go into a disclosure statement (which I'll address below, in connection with the dispute as to the inclusion of the term sheets and the statements as to their significance), but the issue then ceases to be one of disclosure statement adequacy.

When we get to the content of Supplemental Solicitation Material, as contrasted to the disclosure statement itself, different considerations apply. When we're considering matter of that character, we're talking about expressions of views by particular creditors or creditor constituencies, which can and customarily do include argumentative matter and expressions of opinion. The *Century Glove* court, stating that section 1125(b) "does

---

[4] Section 1125(a) provides, in relevant part:

(a) In this section —

(1) "adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan….

[5] *In re Century Glove, Inc.,* 860 F.2d 94, 100 (3d Cir. 1988).

-8-

not limit communication between creditors" and is "not an antifraud device,"[6] permitted a creditor to solicit rejections of a plan after the disclosure statement had been approved. It held that "[a] creditor may receive information from sources other than the disclosure statement,"[7] and at least seemingly did not consider it necessary or appropriate to subject the substance of what the creditor said in its solicitation of those rejections to factual scrutiny.[8]

In fact, the *Century Glove* court said expressly that section 1125 "does not on its face empower the bankruptcy court to require that all communications between creditors be approved by the court."[9] But there are material risks in soliciting acceptances or rejections of a plan based on inaccurate or misleading statements, and it thus has become customary, at least in this district, for constituencies to submit their proposed solicitation material for Court approval anyway, presumably to secure the protection that court review in advance would provide. Those involved in the solicitation process understandably would like to secure the protections of subsection 1125(e) of the Code.[10] A prerequisite to that, in my view, is comfort on the part of the court that the

---

[6] *Id.* at 101.

[7] *Id.* at 100.

[8] *See id.*

[9] *Id.*

[10] It provides:

> (e) A person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title, or that participates, in good faith and in compliance with the applicable provisions of this title, in the offer, issuance, sale, or purchase of a security, offered or sold under the plan, of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized successor to the debtor under the plan, is not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale, or purchase of securities.

-9-

Supplemental Solicitation Material is factually accurate or can be regarded as a fair expression of argument or opinion, is not misleading, and is otherwise proper.

Unfortunately, nobody cited any caselaw setting forth standards for making section 1125(e) determinations, or for otherwise deciding whether Supplemental Solicitation Material should be approved. Though there is some technically distinguishable but nevertheless helpful precedent out there, discussed below, for the most part I need to feel my way somewhat in making these determinations. The standards that I've concluded that I should apply are set forth below.

## II.

### Disclosure Statement Additions

The disclosure statement already contains adequate information. Supporters of the Joint Plan desire that it also include statements as to the perceived difference in the value that would go to ACC Parent senior bondholders under the settlement that's embodied in the Joint Plan, and the value that would have gone to them if a proposal by the ACC Parent Bondholders themselves had been accepted. And the Joint Plan supporters want to show creditors, especially ACC Parent senior bondholders, the actual proposals themselves. Providing that information is relevant, the Plan Supporters contend, to counter assertions by the ACC Bondholder Group that the proposed settlement is grossly unfair.

I agree that the material is relevant. If the proposed settlement in the Joint Plan doesn't differ that much from a proposal the ACC Parent bondholders themselves made, that could be said to undercut assertions that the settlement in the Joint Plan is so bad. It is also relevant to ACC Parent senior bondholder decisions as to whether the difference

-10-

between the bid and asked is sufficiently material to warrant the delay and costs associated with future litigation of the MIA.

Whether differences are or are not material is, of course, debatable. So is the wisdom of settling at all, or on these terms, as compared to the alternative of further litigation. And it almost certainly would be necessary, or at least appropriate, to include any associated contentions by the ACC Bondholder Group concerning the term sheet comparison, and any necessary facts to provide context. But none of that makes the material any less relevant. It's highly relevant. And the term sheets themselves are the best evidence of their similarities and differences.

As I noted before, *Century Glove* makes clear that providing creditors *additional* information doesn't run afoul of section 1125. So there is nothing in section 1125, or in solicitation theory and practice, that makes inclusion of the desired material impermissible or inappropriate.

The remaining issue is whether other factors, such as the circumstances under which the ACC Parent Senior Bondholder's proposal term sheet was delivered, make its publication impermissible or inappropriate for any other reason. The principal reason that was advanced in this regard was that the proposal was made as part of the settlement process; that the letter or spirit of Fed. R. Evid. 408 prohibits it; and that disclosure would be inconsistent with the "unsealing" determination I issued yesterday. I disagree. I believe that in the respects relevant here, Rule 408 doesn't prohibit the disclosure.

Fed. R. Evid. 408 provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was

-11-

> disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

If either side wished to use a settlement proposal, or conduct or statements made in connection with the settlement negotiations, as evidence in the MIA litigation, I would almost certainly agree that it should be inadmissible. But as both sides recognized, Rule 408 does not require exclusion when the evidence is offered for another purpose. Here it is to be used not to bolster, or weaken, either side's position on the merits in the MIA litigation, but rather to address, now that it seems to be in issue, exactly how far apart the parties were in the settlement process.

I also believe that the requisite expectation of confidentiality was absent. I asked the Monitor—sometimes referred to as the "Hall Monitor"—to supervise settlement negotiations because of concerns that parties to the MIA process, whom I had previously directed to meet and confer, were not taking the settlement process seriously, and were not negotiating in good faith. Before the Monitor process began, a lawyer for the Debtors who was acting as a liaison for the feuding creditors confirmed, in an e-mail, with copies to all involved in the settlement process, that the Monitor could share information with me as to the negotiation process before her.[11] In a chambers conference attended by

---

[11] It said, in relevant part:

restricted parties, in a question once more triggered by concerns I had as to whether parties were negotiating in good faith (in the proceedings that were now before the Monitor), I confirmed that there was no objection to the Monitor sharing information as to the settlement proposals before her. And one of the settlement proposal term sheets was included as part of her public report. Given that history, I do not see how the ACC Bondholder Group could expect that its proposal could be regarded any differently.

Claims of privilege, by their nature, stand in the way of ascertaining the truth. Frequently, for compelling societal reasons, we respect them anyway, despite that effect. But there is no basis for finding such a societal interest here.

### III.

### Supplemental Solicitation Material

As noted, the various constituents have also submitted to me, for review and approval, the Supplemental Solicitation Material that they wish to disseminate with the Disclosure Statement at such time as it is approved. Also as noted, there is minimal precedent with respect to the standards under which I or any other bankruptcy judge would make such a determination.

---

> We have conferred with participants in the settlement conference regarding the Court's expressed inclination to appoint a monitor to attend settlement conferences and to facilitate discussions among the parties. The settlement participants, which include the ad hoc committees for ACC Senior Noteholders, FrontierVision and Arahova, Huff and the cross holder group … agree that such an appointment may be beneficial and will cooperate with the Court's designee. *All parties agree that is important that the monitor be authorized to report to the Court on the status and progress of his or her efforts.*

(Hrg. Tr. 179) (emphasis added).

Most helpful, in my view, is thorough and well reasoned analysis by Judge Schermer in the *Apex Oil Company* case.[12]  Though distinguishable on its facts (as dealing with facts under which he would *not* require advance submission of supplemental solicitation material, rather than the standards under which he'd review it if it were presented to him), it considers supplemental solicitation materials outside an approved disclosure statement, and addresses the same considerations that I care about.  After considering the then-recently decided Third Circuit holding in *Century Glove*, and decisions that had considered similar issues based on the earlier bankruptcy court and district decisions in *Century Glove*, he ruled, consistent with the Third Circuit holding, that a party need not receive prior court approval of all material used to solicit another creditor's acceptance or rejection of the debtor's plan.[13]  But he went on to say:

> This Court does not mean to imply from the above holding, however, that a party's post-disclosure statement solicitation efforts should go completely unchecked. That is, assuming that the debtor's exclusivity period has expired, soliciting parties need not obtain prior court approval of solicited materials *only if:*
>
> 1) the information provided is truthful and absent of any false or misleading statements or legal or factual mischaracterizations;
>
> 2) the information is presented in good faith;
>
> 3) the soliciting party does not propose or suggest an alternative plan which has yet to gain court approval or otherwise failed to travel through the appropriate legal channels, as dictated by the Bankruptcy Code.[14]

---

[12]   *See In re Apex Oil Co.*, 111 B.R. 245 (Bankr. E.D. Mo. 1990).

[13]   *Id.* at 249.

[14]   *Id.* (emphasis in original).

-14-

When materials *are* submitted to be for prior court approval, I think I should take into account similar considerations.[15]

The *Century Glove* court stated, in the context of communications to creditors that had *not* been submitted to a bankruptcy court for advance approval, that "§ 1125(b) does not limit communication between creditors. It is not an antifraud device."[16] But assuming that the *Century Glove* court was right in the those observations with respect to solicitation communications that the bankruptcy court never saw, I don't believe they can be carried over to instances where matter is actually put before the Court for approval—as it is in disclosure statement adequacy determinations under section 1125(a), or where a bankruptcy court is asked to pass on supplemental solicitation material. While section 1125(b) may be read (as the *Century Glove* court read it) as dealing with timing,[17] section 1125(a) deals with the substantive prerequisites for a bankruptcy court to determine that adequate disclosure has been made. And an adequate disclosure determination requires a bankruptcy court to find not just that there is enough information there, but also that what is said is not misleading. Whether the process is called "antifraud" protection or something else, it is inconceivable to me that I or any other bankruptcy judge would regard any disclosure as adequate if known to be inaccurate or misleading.

When a bankruptcy judge is asked to approve supplemental solicitation material, I think similar, though not identical, considerations apply. The purpose of the exercise is to ensure that the affected creditors get accurate information upon which they can

---

[15] I note, in that connection, however, that no constituency's Supplemental Solicitation Material here has been agued to constitute solicitation of a competing plan. So while I agree that the third factor identified by Judge Schermer in *Apex Oil* would be important in any case where an issue of that character was presented, it isn't applicable here.

[16] 860 F.2d at 101.

[17] *I.e.,* as addressing when solicitations of acceptances or rejections can be made.

-15-

determine whether or not to accept a plan.  It's not too much to require that it be not misleading.  That means that any facts presented be accurate, and that the disclosure not leave out facts necessary to ensure that whatever is said isn't misleading or deceptive.

I said "similar, though not identical" because I recognize that many of the things that might be said will represent opinion, or even argument.  And that's fine, so long as they're identified (or obvious) as such.  The advantages or disadvantages of a proposed plan (or, as relevant here, the merits of a prospective settlement) are classic examples of this, and unless they are offensive for some other reason, would normally be fair game for presentation.  But statements of fact should be accurate, and I don't think a court properly can approve supplemental solicitation material when it believes or suspects that the facts are inaccurate, or leave out mention of other facts of which the court is aware whose omission makes the facts that were disclosed misleading.

It was suggested that these are advocacy pieces, leaving it to others to get out their side of the story, with other relevant facts, if they wish to.  But I don't agree.  I think analogy to Rule 10b-5 doctrine is much more apt than analogy to the litigation advocacy process, or the political process.  In the litigation scenario, it's true that in much of the adversarial process, litigants lay out only the points that will help them, leaving it to their opponents to then do the same, with the comfort that the judge will be able to separate it all and get to the right decision at the end.  But judges are trained to understand this; creditors aren't, and the solicitation process, at least when effected by means other than an approved disclosure statement, doesn't presuppose the orderly back and forth that proceedings in court do.  And even then, litigants are ethically bound to note controlling authority.

Likewise, in the political process, we see and tolerate 30 second sound bites and snippets, from those of every political party and persuasion, on an all too frequent basis, with some of it of dubious accuracy at best, and with much of it dreadful in its failure to mention other relevant information. But in the political process, First Amendment considerations at least normally trump concerns as to accuracy, and courts aren't asked to rule on fairness, and/or to approve political statements, in advance.

Where, as here, a court is asked to pass on supplemental solicitation material in advance, I think fairness and accuracy are legitimate concerns. And in connection with the latter, I think a court should protect creditors under standards similar to those under which our securities laws protect investors. I think the court must decline to approve supplemental solicitation material to the extent that it knows or suspects that facts are false, or that the proposed disclosures omit facts necessary to make those that have been stated not misleading. I think forward-looking statements, opinions, and argument should in general be permissible, so long as they have a reasonable basis in fact. So are recommendations to accept or reject, and perceived benefits or other reasons for taking the recommended action.

I also believe that if a court is asked to review and approve material in advance, it can and should review the material to ensure that it is relevant to the issues that are legitimate areas of debate; that it not be cute or raise or debate false issues; and that it not be *ad hominem* or defamatory. Once people ask courts to review and approve proposed statements, it is hardly unreasonable for those courts to expect that judicially blessed statements meet minimum standards of fair argument and decorum.

*A. Comments Applicable to All*

Applying those standards, I make the following rulings applicable to all of the classes, some of which will have meaning primarily or wholly in this case alone. If constituents want my approval for their Supplemental Solicitation Material here:

1. The Supplemental Solicitation Materials should focus on the strengths or weaknesses of the plan (or elements of the plan), rather than the plan's proponents or supporters. They should not be *ad hominem*, and should not purport to describe the thinking, motives, strategies or states of mind, of their opponents. While they should not talk about the *purpose* of an opponent's plan position, they can properly talk about its *effect*.

2. On balance (and though I can't rule out the possibility that reasonable people might differ with me here), I think that statements in many of the Supplemental Solicitation Materials drafts that describe the par amount of holdings of their constituencies should be stricken. I'm not of a mind to make such creditors disclose what they paid for their claims, but in the absence of such disclosure, statements as to par amount held don't tell the whole story. More importantly, statements as to the size of positions tend to suggest that support for a plan should be granted or denied based on the perceived importance of the speaker and often unwarranted speculation as to what might come next in the case, rather than the strength of the speaker's ideas. Constituencies may, if they wish, describe, in general terms, the nature of the debt instruments (or other claims) that they hold, their participation in the case, and their perspective in advocating for or against the interests of holders of identified classes of claims.

3. A constituency may, if it wishes, say that it "believes" or "anticipates" that facts are or will be true (or may use similar words), and need not necessarily say

"contend." But its disclosure should be clear in enabling the reader to distinguish between opinions, contentions and/or predictions, on the one hand, and established facts, on the other.

4. Constituencies should not use mocking or theatrical words (such as "complains") to describe their opponents' positions. Rather, less insulting and less *ad hominem* substitutes (such as "asserts") should be used.

5. Comments can be punchy, and the submissions need not be drafted so as to make them boring or read like a corporate prospectus. But I will be wary of "sound bites" that are overly theatrical or that lose their accuracy by their means of expression. Except as noted below, my comments as to things people could say and that I'd approve are in concept, with flexibility as to the means of expression, subject to the comment just noted.

*B. Particular Constituencies' Supplemental Solicitation Material*

**[REDACTED]**

Conclusion

Matters involving inclusion of additional matter into the disclosure statement, and involving my approval of Supplemental Solicitation Material, have been determined in accordance with the standards I've articulated above. The Supplemental Solicitation Material will be approved if and to the extent that it complies with my directions as set forth in Section III(B) above.

Dated: New York, New York      *s/Robert E. Gerber*
      September 21, 2006      United States Bankruptcy Judge