WOLLMUTH MAHER & DEUTSCH LLP
One Gateway Center
Newark, New Jersey 07102
Tel: (973) 733-9200
Attorneys for Praxis Capital Partners, LLC et. al.
James N. Lawlor (JL-6065)

**Hearing Date: December 7, 2006**
**Hearing Time: 9:45 a.m.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ADELPHIA COMMUNICATIONS CORP.,<br>et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 02-41729 (REG)<br><br>Jointly Administered |

**OBJECTION OF THE PRAXIS ENTITIES TO DEBTORS'**
**FIFTH AMENDED JOINT PLAN OF REORGANIZATION**

TO:   THE HONORABLE ROBERT E. GERBER
      UNITED STATES BANKRUPTCY JUDGE

Praxis Capital Ventures, L.P., Praxis Capital Partners, LLC and Praxis Capital Management, LLC (collectively, the "Praxis Entities"), creditors and/or parties-in-interest in the above-captioned chapter 11 cases of Adelphia Communications Corp., et al., debtors and debtors-in-possession (the "Debtors"), by and through their undersigned attorneys, hereby submit this Objection to Debtors' Fifth Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated October 16, 2006 (the "Plan").

## BACKGROUND

1.   On June 25, 2002 (the "Petition Date"), the majority of the Debtors filed voluntary petitions for relief under chapter 11, title 11, United States Code, 11 U.S.C. §101—1330 (the "Bankruptcy Code").

### Praxis Capital Ventures, L.P. Agreement

2.  Prior to the Petition Date, the Debtor ACC Operations entered into a Limited Partnership Agreement with Praxis Capital Partners, LLC (the "General Partner"), dated as of June 8, 2001 (the "Agreement"), which Agreement created Praxis Capital Ventures, L.P. (the "Fund").

3.  The Fund was formed in 2001 to locate, analyze and invest in emerging companies with digital media, telecommunications, information technology and related products and to provide an above-market rate of return on the investments. ACC Operations is the only limited partner of the Fund and made an initial investment of $1.3 million in cash.

4.  One of the principals of the Fund's General Partner was Peter Venetis, the son-in-law of John Rigas, and a member of the Board of Directors. However, when ACC Operations entered into the agreement, the independent members of the Board of Directors first approved of the transaction, with the full Board thereafter voting in favor of the transaction (other than Mr. Venetis, who abstained). Notwithstanding unsupported statements in certain pleadings filed early in this case, the Debtors have never contested the validity of the Agreement or the Funds' operations in any litigation, and have no basis to do so, in any event. Indeed, the Debtors claim to have investigated the transaction but have never pursued any claims against the Praxis Entities.

5.  The Debtors rejected the Agreement by Order dated October 20, 2003.

6.  A timely proof of claim was filed against ACC Operations on January 9, 2004 (the "Praxis Claim"). The Praxis Claim included a copy of the Agreement and also attached a summary of the agreement and set forth the basis for the damages arising from or related to ACC

Operations' breach and alleged that Debtors' conduct caused the Praxis entities to lose approximately $15.4 million.

7. In the Sixth Omnibus Objection to Claims filed by the Debtors, the Debtors objected to the Praxis Claim, alleging in Section B of the objection that their own books and records do not contain a reference to such a claim and labeling the claim as "Overstated and Unsubstantiated."

8. Praxis set forth timely and detailed opposition to the Sixth Omnibus Objection to Claims.

9. Rather than address the opposition to the Sixth Omnibus Objection to Claims during the last year, the Debtors have simply adjourned the matter without date. In addition, the Debtors filed a notice of estimation of claims (the "Estimation Motion") in which they sought to disallow the Praxis Claim for all purposes and request setting the reserve for the Praxis Claim at zero with respect to a prior version of its plan.

10. Praxis filed timely opposition to the Estimation Motion, as well. Ultimately, the Debtors set the reserves at the full Praxis Claim amount under the prior Plan.

## ARGUMENT

### The Objectionable Provisions

11. It is unclear as to whether the Debtors are attempting to eliminate Praxis and similar creditors from being able to fully defend any claims challenge or avoidance action brought by the Debtors or their successors to their claims. For example, the discharge and release provisions of the Plan purport to enjoin creditors from asserting against the Debtors and their successors and/or releasing the Debtors and their successors from any and all rights of set-off and recoupment. See, e.g., §§°16.3(d), 16.15. Thus, a defendant in a claims challenge or in a

litigation would be at a great disadvantage if the provisions remain as written. The provisions also violate the Bankruptcy Code and are patently unfair and inappropriate.

12. In section 11.3 of the Plan, the Debtors and the Plan Administrator seek to retain the right to estimate claims for any purpose at any time, including disputed claims. While estimation may be necessary under certain circumstances, neither the Debtors nor its successors should have unfettered discretion to seek estimation, see 11 U.S.C. § 502(c) (not listing disputed claims as subject to estimation), particularly given the history of these proceedings. As noted, the Debtors have held in abeyance their claim objection against Praxis for fourteen (14) months. Praxis has been repeatedly forced to respond to the Debtors' various motions and proceedings regarding claims and prior versions of the Plan. Under the circumstances, the Debtors should not be permitted to seek estimation of claims already subject to pending claims' challenges.

13. Section 16.2 of the Plan appears to permit subordination of claims below the level of equity, in violation of this Court's holding in Rickel & Associates, Inc. v. Smith (In re Rickel & Associates, Inc.), 272 B.R. 74, 104 (Bankr. S.D.N.Y. 1993). The provision should be stricken

14. Article IX of the Plan abrogates the rights of creditors to file claims for amounts returned to the estate as a result of certain avoidance actions in violation of 11 U.S.C. §502(h). Specifically, the plan provisions authorize the transfer of all causes of action to a liquidating trust, but appears not to permit defendants (other than those specifically recognized in the provision) in such actions to assert affirmative defenses and claims under section 502(h).

## CONCLUSION

WHEREFORE, the Praxis Entities respectfully request that the Court (a) deny confirmation of the Plan absent modifications that would eliminate the foregoing objectionable provisions; and (b) grant such other and further relief as is necessary and appropriate.

> WOLLMUTH MAHER & DEUTSCH LLP
> Attorneys for Praxis Capital Partners, LP, et al.
>
> By: _/s/ James N. Lawlor_
> James N. Lawlor

Dated: November 22, 2006
Newark, New Jersey