Hahn & Hessen LLP
Counsel For X-L Cable Corporation
488 Madison Avenue
New York, NY 10022-5702
      Attn:  Mark Indelicato (MI-1459)
Telephone:    (212) 478-7200

        and

Preston Gates & Ellis, LLP
Counsel for X-L Cable Corporation
925 Fourth Ave.
Suite 2900
Seattle, WA   98104
      Attn:  Marc Barreca, Esq.
Telephone:    (206) 623-7580

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Adelphia Communications Corporation, et al. | Case No. 02-41729 (REG)<br>Jointly Administered |
| Debtors. | |

**X-L CABLE CORPORATION'S OBJECTION TO THE DEBTORS' FIFTH AMENDED**
**JOINT PLAN OF REORGANIZATION DATED OCTOBER 16, 2006**

    X-L Cable corporation ("X-L"), by and through the undersigned counsel, files its objection to the Debtors' Fifth Amended Joint Plan of Reorganization dated October 16, 2006 (the "Fifth Plan"), and represents as follows:

**Background**

    1.    X-L is a general contractor in the business of installing coaxial and fiber-optic television cable systems, with its principal place of business in Sumner, Washington.

    2.    In 2000 and 2001, X-L was employed, pursuant to purchase orders (the "Work Orders"), to install cables in Moscow, Idaho, for Pullman T.V. Cable Co. ("PTC"), and in Mountain Home, Idaho, for Mickelson Media, Inc. ("Mickelson").  PTC and Mickelson are debtors in the above-captioned proceeding.

988555.002 - 1232481.1        1

3. As of August 17, 2001, X-L remained unpaid for services in the amount of $106,375.22 performed on behalf of PTC, and services in the amount of $884,916.43 performed on behalf of Mickelson.

4. The Work Orders do not specify a rate of interest to accrue on unpaid invoices.

5. In August, 2001, X-L filed claims of lien (the "Liens") against PTC and Mickelson pursuant to Idaho Code §45-507, the Idaho materialman's lien statute, and in February, 2002, X-L commenced actions in the Idaho District Court for the Counties of Latah and Elmore to foreclose the Liens.

6. In June, 2002, PTC, Mickelson, and Adelphia Communications Corp. ("Adelphia") filed their petitions for Chapter 11 relief, staying the state court lien foreclosure proceedings.

7. On April 10, 2003, X-L filed proofs of claim (the "Claims", and individually, a "Claim"), in the above captioned proceeding reflecting the outstanding claim subject to the Liens as of the petition date. The Claim against PTC was filed in the amount of $123,119.46, and the Claim against Mickelson was filed in the amount of $897,438.41.[1] The Claims are secured by PTC's and Mickelson's cable communications systems in Moscow and Mountain Home.

8. On November 21, 2005, the Debtor filed its Fourth Joint Plan of Reorganization (the "Fourth Plan").

9. Pursuant to the terms of the Fourth Plan, X-L was listed as a Class 3 secured creditor on its lien claims. The Fourth Plan proposed that Class 3 Claims be treated as follows:

---

[1] X-L also filed an unsecured claim against Adelphia Communications Corp in the amount of $1,020,557.87, which is not implicated in this Objection. The Debtors have filed an objection to the amount of X-L's Class 3 Claims, which is pending at this time.

988555.002 - 1232481.1                     2

> if the Claim is not an Assumed Sale Liability: (x) Cash in an amount equal to 100% of the unpaid amount of such Claim, plus interest to the Effective Date at a rate determined pursuant to the second sentence of Section 8.14 hereof; (y) the proceeds of the sale or disposition of the Collateral securing such Claim to the extent of the value of the holder's secured interest in such Claim; or (z) such other distribution as necessary to satisfy the requirements of the Bankruptcy Code.

Fourth Plan at p.58. Section 8.14, which provided the pre-Effective Date interest rate to be paid on secured claims, read as follows:

> [s]uch interest shall accrue at a rate equal to . . . the non-default rate payable under the agreement or instrument giving rise to such Allowed Claim . . . and to the extent no such agreement or instrument exists . . . then at the rate payable on federal judgments as of the Commencement Date . . . .

Plan at pp.127-128.

10. The Fourth Plan further provided that Class 3 Claims were unimpaired.

11. X-L, and a number of other creditors whose claims are secured by statutory liens objected to confirmation of the Fourth Plan on the grounds that a plain-language reading of the Fourth Plan indicated that that the Debtors proposed to pay X-L the federal judgment rate of interest on its Class 3 Claims rather than the statutory rate of interest.

12. The Fourth Plan was not confirmed, and the Debtor has now proposed the Fifth Plan, in which X-L is a "SD 2" Creditor, which class consists of secured creditors of subsidiaries of Adelphia Communications Corporation.

13. Under the Fifth Plan, SD 2 Claims will be treated as follows:

> Each holder of an allowed Subsidiary Debtor Secured Claim will (A) receive on the Initial Distribution Date or the first Subsequent Distribution Date after which such Subsidiary Debtor Secured Claim becomes Allowed, a Cash payment equal to the sum of (1) the principal amount of such holder's Allowed Subsidiary Debtor Secured Claim and (2) accrued post-petition interest from the Commencement Date up to but not including the Effective Date, at (i) the Applicable Contract Rate, (ii) an interest rate agreed to by the Proponents (or after the Effective Date, the Plan Administrator) and such holder, (iii) an interest rate previously agreed to by the Debtors and holders as previously approved by the Bankruptcy Court, or (iv) if no agreement can be reached, as determined by the Bankruptcy Court after notice and a hearing as sufficient to render such Claim unimpaired . . . .

Fifth Plan at pp.15-16.

## Plan Objection

14. X-L objects to the above-detailed treatment of its Claims as contrary to the requirements of the Bankruptcy Code. The Fifth Plan, like the Fourth Plan, does not provide for payment of interest to statutory lien holders at the applicable statutory rate of interest. It merely provides that if no agreement can be reached, than the Bankruptcy Court will decide the issue. There is no reason why resolution of the issue should be delayed subsequent to confirmation of the Fifth Plan. Absent resolution of this issue prior to confirmation, X-L's secured claims would otherwise be impaired.

15. It is well-settled under Idaho law that a materialman's lien claim is entitled to interest. *See, e.g., Franklin Bldg. Supply Co. v. Sumpter*, 139 Idaho 846, 852, 87 P.3d 955 (Idaho, 2004) ("[a] claim of lien under I.C. § 45-501 includes interest"). It is also well settled that absent a contractual agreement, the lien claimant is entitled to interest at the applicable statutory rate. *Id.* at. 852 (with respect to materialman's lien claims, "the statutory rate of interest provides the interest rate in the absence of an express contract") citing *Guyman v. Anderson*, 75 Idaho 294, 271 P.2d 1020 (Idaho, 1954). The statutory rate of interest on materialman's lien claims in Idaho is twelve percent (12%) per annum. I.C. § 28-22-104.[2] The interest accrued to date on X-L's Claims would be approximately $650,000.

16. A non-consensual, oversecured creditor is entitled to receive postpetition interest on its claim, even if the underlying agreement that has given rise to its claim is

---

[2] (1) When there is no express contract in writing fixing a different rate of interest, interest is allowed at the rate of twelve cents (12¢ ) on the hundred by the year on:
    a. Money due by express contract.
    b. Money after the same becomes due.

c. Money lent.
d. Money received to the use of another and retained beyond a reasonable time without the owner's consent, express or implied.
e. Money due on the settlement of mutual accounts from the date the balance is ascertained.
f. Money due upon open accounts after three (3) months from the date of the last item.

silent with respect to interest. *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S. Ct. 1026, 103 L.Ed.2d 290 (1989) ("there is no significant reason why Congress would have intended, or any policy reason would compel, that consensual and nonconsensual liens be treated differently in allowing postpetition interest"); *In re Dominick*, 244 B.R. 51 (Bankr. N.D.N.Y., 2000). Moreover, in the absence of a contract rate, the appropriate rate of interest is the state-law statutory rate. *Dominick*, 244 B.R. at 55. *See, also, In re Navis Realty, Inc.,* 193 B.R. 998, 1012 (Bankr. E.D.N.Y., 1996) (statutory rate of interest established by city code, rather than federal judgment rate, would be applied to calculate postpetition interest on city's tax lien pursuant to 11 U.S.C. § 506(b)).

For the foregoing reasons, and for such other reasons as may be established at a hearing on this matter, X-L respectfully requests that the Court deny confirmation of the Debtors' Plan.

Dated: New York, New York
November 22, 2006

> X-L Cable Corporation
> By its attorneys
> HAHN & HESSEN LLP
> Counsel For X-L Cable Corporation
>
> By: /s/ Mark Indelicato
>   Mark Indelicato (MI-1459)
>   488 Madison Avenue
>   New York, NY 10022-5702
>   Telephone:  (212) 478-7200
>   Fax:  (212) 478-7400
>
>   and
>
> PRESTON GATES & ELLIS, LLP
> Counsel for X-L Cable Corporation
>
>   Marc Barreca, Esq.
>   925 Fourth Ave.
>   Suite 2900
>   Seattle, WA  98104
>   Telephone:  (206) 623-7580
>   Fax:  (206) 623-7022

988555.002 - 1232481.1                              5