**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re                                              Chapter 11

ADELPHIA COMMUNICATIONS                            Case No. 02-41729 (REG)
CORPORATION, et al.,
                                                   (Jointly Administered)

                         Debtors.

----------------------------------------------------------------x

# MEMORANDUM DECISION ON
# MOTION OF ADELPHIA COMMUNICATIONS CORPORATION
# TO COMPEL LUCENT TECHNOLOGIES, INC. TO PRODUCE DOCUMENTS

## A P P E A R A N C E S

Joanne B. Wills
Klehr, Harrison, Harvey, Branzburg
    & Ellers LLP
260 South Broad Street
Philadelphia, Pennsylvania
*Attorneys for Adelphia Communications Corp. et al.*

Joseph Lubertazzi, Jr.
McCarter & English, LLP
100 Mulberry Street
Newark, New Jersey
*Attorneys for Lucent Technologies, Inc.*

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

      Three discovery issues have arisen in this contested matter, an objection by Adelphia

Communications Corporation, and its subsidiaries (collectively, "Adelphia" or "Debtors") to the

proof of claim filed in this case by Lucent Technologies, Inc. ("Lucent") in the amount of

$44,721,519.78. Each issue concerns the scope and applicability of the attorney-client privilege.

**JURISDICTION**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Acting Chief Judge Robert J. Ward dated July 10, 1984. The allowance or disallowance of claims against a bankruptcy estate is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(B). By order dated April 11, 2006 (ECF Docket No. 10399), Bankruptcy Judge Robert E. Gerber transferred certain issues in the Adelphia bankruptcy cases, including the Lucent claims objection, to this Court for hearing and determination.

**BACKGROUND**

On June 10, 2002, Century Communications Corp. filed a Chapter 11 bankruptcy petition. On June 25, Adelphia Communications Corp. ("ACC") and the balance of the Debtors commenced cases under Chapter 11 of the Bankruptcy Code.[1]

Lucent filed proof of claim No. 135800, dated September 9, 2003 in the amount of $44,721,519.78 for "telecommunication products" (the "Proof of Claim"). The Proof of Claim noted: "Collateral is in the possession of Devon Mobile Communications, L.P." In a four-page statement annexed as part of its Proof of Claim, Lucent alleges the following relevant facts:

- Adelphia is indebted to Lucent in connection with a General Agreement for Personal Communications Service Systems executed October 19, 2000 (the "General Agreement"). The General Agreement is between Lucent and Devon Mobile Communications, L.P. ("Devon").

- Adelphia is responsible for payment for all equipment and services Lucent provided to Devon.

- By letter dated August 7, 2002 Lucent terminated the General Agreement effective August 8, 2002.

---

[1]   As these bankruptcy cases were commenced prior to October 17, 2005, the amendments to the Bankruptcy Code made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub. L. 109-8) do not apply.

- 2 -

- Adelphia owes Lucent $16,800,516.27 in connection with unpaid invoices for products that were, as of the date of the Proof of Claim, installed in Devon's network.

- Adelphia also owes Lucent at least $12,363,341.31 in connection with products that were, as of the date of the Proof of Claim, installed in Devon's network but not invoiced by Lucent.

- Adelphia owes Lucent $15,557,622.20 in connection with orders placed for equipment by Devon which had not, as of the date of the Proof of Claim, been invoiced by Lucent and was located in a Lucent-controlled warehouse.

According to Lucent, the amounts in its Proof of Claim will be reduced to the extent that Lucent is able to sell the equipment, or if Lucent receives payment from Devon.

Adelphia objected to Lucent's Proof of Claim as part of its "First Omnibus Objection to the Allowance of Certain Claims" (ECF Docket No. 6087; hereafter, the "Claims Objection"). Under the subheading of "Books and Records Objections," the Claims Objection seeks to expunge Lucent's Proof of Claim (as a batch of several other claims) on the ground that there is "No Basis Per Books and Records." Specifically, Adelphia concludes, after careful review, that the Proof of Claim should be expunged because it either "did not contain adequate information or documentation supporting the claimed amounts" or was "not reflected in the Debtors' books and records".

On December 10, 2004, Lucent filed a Response to the Claims Objection (ECF Docket No. 6584; hereafter, the "Response"). The Response alleges the following relevant facts:

- Lucent has conducted business with ACC and its affiliates since at least 1997.
- On or about November 3, 1995, Devon G.P., Inc. and ACC, both Delaware corporations, entered into an Agreement of Limited Partnership to create Devon, a Delaware limited partnership.
- Under the General Agreement with Devon, Lucent received hundreds of purchase orders to deliver products and licensed materials to various locations where Devon operated its business. The vast majority, if not all, of these purchase orders, were on a form indicating the identity of the entity issuing the purchase orders as "Adelphia".
- At all time, Lucent looked to "Adelphia" for payment of the invoices for product and licensed materials delivered to Devon. In fact, ACC asked

- 3 -

        Lucent to forward all Devon Invoices to Adelphia at an address in Coudersport, Penn.

- Lucent believes that none of the Devon invoices were paid by Devon. To the extent that Devon invoices were paid, Lucent received payment from ACC or from another ACC affiliate at ACC's direction.

- From the inception of the partnership with Devon, Lucent alleges that ACC was Devon's sole source of operating capital and caused Devon to be undercapitalized to conduct the business for which it was formed. All monies necessary to operate Devon's business and pay Devon's creditors were provided by ACC.

- According to Lucent: "Devon operated merely as a front for ACC, and ACC so controlled Devon's business as to make it inequitable for ACC not to pay the debts it caused Devon to incur to Lucent. Because Devon was operated as the alter ego or mere instrumentality of ACC, ACC is liable to Lucent for the entire amount of all unpaid Devon Invoices."

- Lucent claims that, due to the manner in which ACC caused the Devon partnership to be created and operated, ACC should be deemed to have acted in the capacity of a general partner of Devon, and should therefore be liable for the Devon's debts to Lucent. Specifically, Lucent contends: "In light of its course of business with Lucent, ACC should be held liable for all unpaid Devon Invoices pursuant to the doctrines of implied contract, quasi contract and quantum meruit."

Discovery has continued, pursuant to a scheduling order most recently amended on December 20, 2006 (ECF Docket No. 12858). Currently, fact discovery is scheduled to be completed by January 31, 2007, and a final pre-trial conference is scheduled for June 13, 2007.

On October 27, 2006, Adelphia filed a motion to compel (ECF Docket No. 12390; the "<u>Motion to Compel</u>"). Lucent filed Opposition to the Motion to Compel (ECF Docket Nos. 12412, 12413, 12414), and Adelphia filed a Reply (ECF Docket No. 12441). On November 15, 2006, the Court conducted a hearing on the Motion to Compel. During the November 15, 2006 hearing, many of the issues in the Motion to Compel were resolved by agreement of the parties and rulings made by the Court on the record. The Court reserved decision on three issues in the Motion to Compel that concern the applicability of the attorney-client privilege.

**DISCUSSION**

The attorney-client privilege attaches where (1) legal advice is sought, (2) from a professional legal advisor in his or her capacity as such, (3) the communication relates to that purpose, (4) the communication is made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or the legal advisor, (8) except the protection be waived. *Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.*, 210 F.RD. 506, 508 (S.D.N.Y. 2002).

Fed. R. Civ. P. 26(b)(5), which is applicable to this contested matter pursuant to Fed. R. Bankr. P. 7026 and 9041, states in relevant part:

> **(5) Claims of Privilege or Protection of Trial-Preparation Materials.**
>
> **(A) Information Withheld.** When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial-preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

The party claiming the privilege bears the burden of showing its applicability. *Smith v. Conway Org., Inc.*, 154 F.R.D. 73, 77 (S.D.N.Y. 1994); *In re Leslie Fay Cos., Inc. Secs. Litig.*, 161 F.R.D. 274, 280 (S.D.N.Y. 1994); *Redvanly v. NYNEX Corp.,* 152 F.R.D. 460, 465 (S.D.N.Y. 1993).

**I.    The "At Issue" Waiver Doctrine**

First, Adelphia asserts that otherwise-privileged documents should be produced pursuant to the "at issue" waiver doctrine. In Adelphia's view, Lucent has put privileged information at issue by making it relevant to the case:

> Lucent's reasonable belief as to whether Adelphia was participating in the control of Devon has been directly injected into this litigation by Lucent's claim. It is Lucent's contention that it reasonably believed that Adelphia was controlling Devon as a *de facto* general partner of Devon; in Lucent's view, Adelphia is obligated to Lucent as if it were Devon. On the other hand, it is Adelphia's contention that Lucent at all times knew that it was dealing exclusively with the limited partnership, Devon. However, during the course of its relationship with Devon, Lucent embarked on a course of conduct to manufacture a factual basis for its alleged "reasonable belief" that Adelphia was the *de facto* general partner of Devon. The documents Lucent alleges are privileged … are relevant to this issue.

Motion to Compel, p. 22-23.[2]

"The 'at issue waiver doctrine' is particularly applicable where the plaintiff's state of mind, reasonable belief and reasonable reliance is of central importance to the litigation. *Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.*, 210 F.RD. 506, 510-511 (S.D.N.Y. 2002). The "at issue" waiver doctrine is liberally applied where the truth of a party's assertion can only be assessed by examination of privileged communications, *Id.* at 510, or where the assertion of a claim "in fairness requires examination of protected communications." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). The "at issue" waiver doctrine prevents unfair use of the attorney-client privilege as a sword, to disclose only self-serving communications, and as a shield, to bar discovery of other communications that an adversary could use to challenge the truth of the claim. *Id.* at 1292; *see also Sanofi-Synthelabo v. Apotex Inc.*, 363 F.Supp. 2d 592, 595 (S.D.N.Y. 2005) (waiver not warranted where party asserting privilege made no affirmative statement that the adversary "must impeach or suffer an adverse consequence").

> The crucial issue is not merely some connection to a judicial process but rather the type of unfairness to the adversary that results in litigation circumstances when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion.

---

2     Citations to the Motion to Compel are to Adelphia's "Memorandum of Law in Support of Adelphia's Motion to Compel".

- 6 -

*John Doe Co. v. United States*, 350 F.3d 299, 306 (2d Cir. 2003).  The Second Circuit has emphasized that the doctrine is "rooted in fairness" and has "cautioned against broad generalizations" because applicability will often turn "on the specific context in which the privilege is asserted." *Id.* at 302 (citations and quotations omitted).  Courts have struggled with the precise limits of the doctrine and expressed concern that if taken at face value, "a large majority of claims of privilege would be subject to waiver." *Pereira v. United Jersey Bank*, 1997 WL 773716 at *3 (S.D.N.Y. Dec. 11, 1997) (citing cases).

Lucent responded to the Motion to Compel by submitting a non-exclusive list of facts it will rely upon at trial to show that Adelphia controlled Devon, and that Lucent reasonably believed that Adelphia was acting as the general partner of Devon.  *See* Lucent's "Memorandum In Opposition to Adelphia's Motion to Compel Production of Documents" (hereafter, "Opposition"), p. 3-5.  The facts asserted by Lucent in the Opposition do not place at issue Lucent's actual knowledge, subjective belief, or the advice of counsel.

Application of the "at issue" doctrine can be challenging in the context of a claims objection, where the pleadings do not follow the usual pattern of plaintiff and defendant, complaint and answer.  At the November 15, 2006 hearing in this case, counsel acknowledged:

> One of the problems, Your Honor, is there is no complaint and there is no answer in this.  All we have is a proof of claim.  That is one of the things that is a bit problematic.  We have a proof of claim, so that there are no factual allegations that I can even work off….

Transcript of November 15, 2006 hearing (hereafter, "Nov. 15, 2006 Tr."), p. 38-39.  A review of the claims objection process may be useful.  Title 11 U.S.C. § 502 governs the allowance of claims against the bankruptcy estate and provides in relevant part:

> (a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

> (b) … if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
>
> > (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]

Pursuant to Bankruptcy Code Section 502(a), a proof of claim is deemed allowed unless a party in interest objects to it. As Bankruptcy Rule 3001(f) states, "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Because a properly filed proof of claim is deemed allowed until objected to, "such allowance compels the objecting party to go forward and produce sufficient evidence to rebut the claimant's *prima facie* case." *In re Greene*, 71 B.R. 104, 106 (Bankr. S.D.N.Y. 1987). "If the objecting party rebuts the claimant's *prima facie* case, 'it is for the claimant to prove his claim, not for the objector to disprove it.'" *Id.* (quoting *In re Gorgeous Blouse Co., Inc.*, 106 F. Supp. 465 (S.D.N.Y. 1952)). "Once an objectant offers sufficient evidence to overcome the prima facie validity of the claim, the claimant is required to meet the usual burden of proof to establish the validity of the claim." *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000) (quoting Collier on Bankruptcy).

In its Claims Objection, Adelphia asserted, and Lucent apparently does not dispute, that there is no basis for liability based upon Adelphia's books and records. Thus, the Claims Objection rebutted the *prima facie* effect of Lucent's proof of claim and placed the burden on Lucent to prove its entitlement to recovery from Adelphia's estate. In support, Lucent claims that Devon operated as a front for Adelphia, and that based upon Adelphia's course of conduct the unpaid Devon invoices should be enforceable "against the debtor and property of the debtor". *See* 11 U.S.C. § 502(b)(1). Lucent cites several theories, including (1) implied contract, (2) quasi contract, (3) quantum meruit, and (4) claims implicating the Delaware Revised Uniform

- 8 -

Limited Partnership Act ("RULPA"). These legal theories require the proponent to show, among other elements, "the presumed intention of the parties as indicated by their conduct" (implied contract)[3], "reasonable and foreseeable reliance" (quasi contract)[4], "reasonable expectation of payment" (quantum meruit)[5] and reasonable belief based upon the other party's conduct (RULPA)[6]. Thus, Lucent can recover against Adelphia by reference to the parties' conduct, an objective assessment that does not place protected communications at issue. Upon review of the Opposition and Lucent's Response to the Claims Objection, the Court does not believe that Lucent has affirmatively placed its actual knowledge or belief at issue, and Lucent will apparently make its case based on Adelphia's conduct. Lucent will bear the burden (and the risk) of proof at trial and will be precluded from presenting any testimony or documents that

---

[3]   Under New York law, the conduct of the parties may lead to the inference of a binding agreement:

> A contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct. It is just as binding as an express contract arising from declared intention, since in the law there is no distinction between agreements made by words and those made by conduct.

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 582 (2d Cir. 2006) (quoting *Jemzura v. Jemzura,* 36 N.Y.2d 496, 503-04, 369 N.Y.S.2d 400, 330 N.E.2d 414 (N.Y. 1975)).

[4]   "The elements of promissory estoppel as a quasi-contract claim, are: (1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the promisee, and (3) injury sustained by the party asserting the estoppel by reason of his reliance." *U S West Fin. Servs., Inc. v. Tollman*, 786 F.Supp. 333, 343 (S.D.N.Y. 1992) (citing *Esquire Radio & Elecs., Inc. v. Montgomery Ward & Co.*, 804 F.23d 787, 793 (2d Cir. 1986).

[5]   "In order to make out a claim in quantum meruit, a plaintiff must establish (1) the performance of the services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *iWon, Inc. v. Ourhouse, Inc.*, 192 Misc.2d 1, 5, 744 N.Y.S.2d 791, 794-795 (N.Y. Sup. Ct. 2001).

[6]   The RULPA provides:

> (a) A limited partner is not liable for the obligations of a limited partnership unless he or she is also a general partner or, in addition to the exercise of the rights and powers of a limited partner, he or she participates in the control of the business. However, if the limited partner does participate in the control of the business, he or she is liable only to persons who transact business with the limited partnership reasonably believing, based upon the limited partner's conduct, that the limited partner is a general partner.

Del. Code Ann., tit. 6, § 17-303.

relate to the subjective belief or reliance of Lucent employees unless Adelphia has previously had an opportunity to examine those witnesses and documents on that subject matter. Adelphia can attempt to rebut Lucent's claims by showing that Lucent "at all times knew that it was dealing exclusively with the limited partnership, Devon," but Adelphia is not entitled, pursuant to the "at issue" doctrine to discovery of protected communications in aid of its defense.

This case resembles *Standard Chartered Bank PLC v. Ayala Int'l Holdings Inc.*, 111 F.R.D. 76, 79 (S.D.N.Y. 1986), in which the defendant ("Ayala") asserted several counterclaims premised upon oral representations allegedly made by the plaintiff ("SCB") concerning loans the plaintiff made to a third party ("Behring"). SCB argued that because an element of Ayala's counterclaim included justifiable reliance on the oral representations, Ayala waived the attorney-client privilege as to any communications concerning Ayala's acquisition of Behring stock. *Id.* at 80. The district court ruled that Ayala had not placed those confidential communications in issue:

> What is relevant to the counterclaims here is not what counsel said to Ayala or what Ayala said to counsel, but what Ayala knew or should reasonably have been expected to know prior to acquiring the Behring stock. To be sure, as in every lawsuit, it would be useful and convenient for SCB to obtain Ayala's privileged material, and the substance of its confidential communications with its attorneys might reveal some of what Ayala knew. But those are not reasons to void the attorney-client privilege. Ayala's privileged communications are not the only available means by which SCB can learn what Ayala knew. Plainly and simply, Ayala, if asked in discovery must itself reveal what it knew.

*Id.* at 81. In the case at bar, Adelphia attempts to invoke the "at issue" waiver doctrine in order to gain access to privileged communications to learn what Lucent "knew". But, like SCB, Adelphia can learn what Lucent knew from other sources[7] and can ask the direct question of witnesses in discovery and at trial. The fact that Adelphia would find it useful to learn what

---

[7] At the November 15, 2006 hearing, counsel for Adelphia stated: "Your Honor, I have gotten information through other sources, but I have no idea what information is contained in these [privileged] documents. I don't know if I have gotten this information from other sources. I have no idea." Nov. 15, 2006 Tr. at 28.

- 10 -

Lucent told its lawyers, or vice-versa, does not raise "fairness" concerns that would require waiver of the privilege. To paraphrase, the relevant issue in this contested matter is not what Lucent's counsel said to Lucent, or what Lucent said to its counsel, but what Lucent knew or should reasonably have been expected to know.

The Court disagrees with Adelphia's argument that this case warrants an outcome similar to *Pereira v. United Jersey Bank*, *supra,* 1997 WL 773716. The plaintiff in *Pereira* was a bankruptcy trustee who commenced an action to recover allegedly preferential transfers, and the defendant asserted a setoff defense. Of central importance to the setoff defense was the date when the defendant first became aware of the debtor's check-kiting scheme because that fact would be material in resolving whether the right to setoff had been exercised in good faith. *Id.* at *1. Judge Preska rejected an argument for broad application of the "at issue" waiver, noting that the Second Circuit requires a finding that the truth of the factual assertions can *only* be assessed by examining the privileged communication. *Id.* at *5. Judge Preska ruled that fairness concerns required waiver of the privilege in that case based on "more refined" arguments. *Id.* Specifically, the defendant's attorneys were so involved during the relevant time period that every inquiry into the facts resulted in assertion of the attorney-client privilege. *Id.* at *5. Due to the "critical role" of the defendant's counsel in "matters intimately related to the setoff defense," the plaintiff was permitted to "inquire into every aspect of the advice given by counsel with respect to the setoff defense." *Id*. at 6. Thus, in *Pereira*, the truth of the defendant's factual assertions, *i.e.*, what the defendant knew, could *only* be assessed by examining the privileged communications. Adelphia does not face the same predicament in this case.

**II.     Disclosure of the "Pacchia Documents"**

Adelphia claims that Lucent must disclose 29 documents that it transmitted to Anthony Pacchia (the "Pacchia Documents"). Mr. Pacchia is an employee of Traxi, LLC ("Traxi"). Adelphia claims that Lucent used Traxi employees as consultants "in the ordinary course of its business to manage Lucent credit risks generally and to otherwise assist Lucent's Global Asset Recovery group." Motion to Compel, p. 3. Lucent's in-house attorney testified that Lucent retained Mr. Pacchia's services in order to "look[ ] at the creditworthiness of customers, especially customers who appeared to be experiencing financial difficulties, and work[ ] on a strategy to mitigate Lucent's risk." Deposition of Cynthia Roberts, p. 30, annexed as Exhibit B to the Motion to Compel. Thus, Adelphia reasons that the element of confidentiality was destroyed as to the Pacchia Documents, and that any claim of privilege was forfeited because "the presence of third-party independent contractors destroys the attorney-client privilege, even though the third-party had a 'working relationship' with the party seeking to assert the privilege." Motion to Compel, p. 18 (citing *Glaxo, Inc. v. Novopharm, Ltd.*, 148 F.R.D. 535, 539 (E.D.N.C. 1993) and *Liggett Gp., Inc. v. Brown & Williamson Tobacco Corp.*, 116 F.R.D. 205, 211 (M.D.N.C. 1986)).

At the outset, Adelphia takes a narrow view of the law in this area. "Under a doctrine adopted by the Eighth Circuit Court of Appeals and some district courts in the Second Circuit, communications between a company's lawyers and its independent contractor merit protection if, by virtue of assuming the functions and duties of [a] full-time employee, the contractor is a *de facto* employee of the company." *Export-Import Bank of the U.S. v. Asia Pulp & Paper Co.,* 232 F.R.D. 103, 113 (S.D.N.Y. 2005). *See In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 217 (S.D.N.Y. 2001) ("Consistent with Supreme Court Standard 503, courts have held that the attorney-client privilege protects communications between lawyers and agents of a client where

such communications are for the purpose of rendering legal advice.") (citing *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677 (1981)); *In re Bieter Co.*, 16 F.3d 929, 937 (8th Cir. 1994) ("[W]hen applying the attorney-client privilege to a corporation or partnership, it is inappropriate to distinguish between those on the client's payroll and those who are instead, and for whatever reason, employed as independent contractors.").

> To determine whether a consultant should be considered the functional equivalent of an employee, courts look to whether the consultant had primary responsibility for a key corporate job … whether there was a continuous and close working relationship between the consultant and the company's principals on matters critical to the company's position in litigation …, and whether the consultant is likely to possess information possessed by no one else at the company.

*Export-Import Bank of the U.S. v. Asia Pulp & Paper Co.*, 232 F.R.D. at 113 (citations omitted).

For example, in *In re Beiter Co.*, *supra*, the Eighth Circuit held that the attorney-client privilege protected communications between an attorney and the client's independent consultant. The consultant was not simply present at meetings, he was "the sole representative" and was involved on a daily basis in the client's business on the subject of the litigation. *Id.* at 936-938. The Eighth Circuit could find "no principled basis" to distinguish the consultant's role from that of an employee, and "his involvement in the subject of the litigation makes him precisely the sort of person with whom a lawyer would wish to confer confidentially in order to understand [the client's] reasons for seeking representation." *Id.* at 938. As a result, the consultant was "in all relevant respects, the functional equivalent of an employee." *Id.*

In *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 2002 WL 31556383 (S.D.N.Y. Nov. 15, 2002), the attorney-client privilege was not destroyed where the client ("Fox") disclosed confidential documents to its independent contractors. Relying on an "uncontradicted affidavit" from Fox, the court concluded that the independent contractors were the functional equivalent of employees and reasoned that:

- 13 -

> Fox's determination to conduct its business through the use of independent contractors is a result of the sporadic nature of employment in the motion picture industry… . The fact that the nature of the industry dictates the use of independent contractors over employees should not, without more, create greater limitations on the scope of the attorney-client privilege.

*Id.*

In response to the Motion to Compel, Lucent submitted an affidavit from John R. McCord, Lucent's assistant treasurer, who has served as the head of Lucent's Global Asset Recovery group since 2001. Mr. McCord states that he supervised the Traxi employees, including Mr. Pacchia, and that Mr. Pacchia and at least three other Traxi employees "devoted three years of full-time work to Lucent matters." *See* "Affidavit of John R. McCord in Connection with Motion to Compel Production of Documents" (ECF Docket No. 12413), ¶5. Mr. Pacchia was given "substantial responsibility" for relations with Adelphia and Devon and "beginning at some point in 2001 was essentially the primary contact between Lucent and Adelphia for matters pertaining to the companies." *Id.*, ¶7. Mr. Pacchia "was authorized to speak and act on behalf of Lucent in connection with these matters," interacted with Lucent's attorneys as part of his job, and "received legal advice and communicated with counsel just like any other employee of Lucent would have." *Id.* At the November 15, 2006 hearing, Lucent's bankruptcy counsel, Mr. Lubertazzi, stated:

> I had some influence in having Mr. Pacchia become employed by Lucent, Your Honor. Lucent had no infrastructure to deal with the credit problems that it ultimately experienced and the industry experienced, and Mr. Pacchia's company was hired to render what I will call short-term assistance, so that when the problems resolved themselves, Lucent did not have to deal with formal employee issues, such as pension and items like that. We have no secret of it, that Traxi was hired. Mr. McCord was hired a few months after Traxi was hired, and Lucent created officially within Lucent the Global Asset Recovery Department.

Nov. 15, 2006 Tr. at 58.

Adelphia contends that Lucent has not proven Mr. Pacchia was the functional equivalent of a Lucent employee. ECF Docket No. 12441 (hereafter, the "Reply"), p. 1. Adelphia does not dispute any fact contained in the McCord Affidavit but suggests that "[t]he best evidence of the terms and conditions of Lucent's engagement of Traxi is the written engagement itself." *Id.* at 1-2. Adelphia makes no effort to dispute Mr. McCord's assertions that Mr. Pacchia (1) had "substantial responsibility" for Lucent's relations with Adelphia and Devon, (2) was "essentially the primary contact" between Lucent and Adelphia, (3) was "authorized to speak and act on behalf of Lucent" in connection with the Adelphia and Devon matters, and (4) interacted with Lucent's attorneys as part of his job requirements "just like any other employee of Lucent". As in the *Twentieth Century Fox* case, *supra*, the Court has an "uncontested affidavit" and has no cause to doubt that Mr. Pacchia is the functional equivalent of a Lucent employee who is "precisely the sort of person with whom a lawyer would wish to confer confidentially." *In re Bieter Co.*, 16 F.3d at 938.

Adelphia also argues that Traxi and Mr. Pacchia were not retained by Lucent to assist with litigation, but with "global problems in the telecommunications industry," and that Lucent must prove that the Pacchia Documents were for communications made for the purpose of obtaining legal advice. Reply, p. 1-2. Adelphia has asked the Court to review the Pacchia Documents *in camera*. *See* Reply, p. 2. Lucent has not submitted the Pacchia Documents for *in camera* review because, as discussed at the November 15, 2006 hearing, Mr. Pacchia was scheduled to be deposed by Adelphia, and his testimony could resolve Adelphia's doubts as to whether the communications at issue were for the purpose of obtaining legal advice. If, after deposing Mr. Pacchia, Adelphia continues to object to Lucent's claim that the Pacchia Documents are privileged, Lucent will be required to submit the Pacchia Documents for the

Court's consideration *in camera*, as the Court has been asked to do with regard to the documents discussed below.

### III.    *In Camera* **Document Review**

The attorney-client privilege extends only to "legal advice" as distinguished from business advice. *Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.*, 210 F.RD. at 508. Thus, if a party or its attorney prepares a document in the ordinary course of business, the attorney-client privilege will not protect that document from discovery even if the party is aware that the document may also be useful in the event of litigation. *Redvanly v. NYNEX Corp.* 152 F.R.D. at 465.

Adelphia alleged that insufficient detail was provided as to certain documents identified by Lucent in the privilege log only as "Attorney email" or "Attorney memo". By agreement of the parties at the November 15, 2006 hearing, the court has examined 20 of these documents *in camera* in an attempt to determine whether or not they are protected by the attorney-client privilege. It should be noted that only the e-mails, rather than the documents attached to some of the e-mails, appear to be at issue, and only the e-mail messages have been provided to the Court *in camera*. The Court presumes that the parties are in agreement as to the privileged or non-privileged status of any attachments.

After review *in camera*, the Court concludes that 12 of the documents, (Doc. Nos. 27, 41, 44, 49, 50, 58, 62, 63, 87 and 89 on the privilege log), were made for the purpose of obtaining legal advice and are subject to the attorney-client privilege. As for the other eight documents (Doc. Nos. 28, 29, 31, 32, 33, 51, 54, 57, 86 and 88 on the privilege log), the purpose of the communication is not clear from the substance of the e-mail message, and it is not possible for

the Court to assess at this time the significance of the sender, recipient and time-frame without assistance of the parties.[8]  Where the purpose of the communication is unclear, Lucent, the bearer of the burden of proof, has two options.  Lucent may (1) file an additional submission on notice to Adelphia providing supplemental information necessary to explain why each document was made for the purpose of obtaining legal advice or (2) produce the documents.  Lucent should either provide supplemental information or produce the documents within 20 days of the date of this decision.

## **CONCLUSION**

Counsel for Adelphia is directed to submit an order consistent with this decision and the Court's earlier rulings on the Motion to Compel made on the record at the November 15, 2006 hearing.  A further pre-trial conference has been scheduled in this case for February 21, 2007 at 10:30 a.m.

Dated: Poughkeepsie, New York
      February 20, 2007                 /s/ Cecelia Morris
                                       CECELIA G. MORRIS
                                       UNITED STATES BANKRUPTCY JUDGE

---

[8] For example, one of these documents is a two-paragraph e-mail from a member of the Lucent Law Division to Lucent's corporate counsel, discussing the progress of work on a memo. The memo was not provided to the Court, and the e-mail does not indicate the substance of the memo. The sender indicates that he will continue to work on the memo. The e-mail also mentions a conversation with "Tony" and Tony's impressions of the decisions of another party or parties referred to in the e-mail as "they". It is impossible for the Court to ascertain any significance or purpose from this communication, let alone whether or not it was for the purpose of obtaining legal advice.