<u>FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re                                                    Chapter 11

ADELPHIA COMMUNICATIONS                                  Case No. 02-41729 (REG)
CORPORATION, et al.,
                                                         (Jointly Administered)

                        Debtors.


-------------------------------------------------------------x

## MEMORANDUM DECISION ON
## MOTION OF ADELPHIA COMMUNICATIONS CORPORATION
## <u>FOR SUMMARY JUDGMENT</u>


<u>A P P E A R A N C E S</u>

Joanne B. Wills, Esq.
Klehr, Harrison, Harvey, Branzburg
    & Ellers LLP
260 South Broad Street
Philadelphia, Pennsylvania
*Attorneys for Adelphia Communications Corp. et al.*

Eduardo J. Glas, Esq.
Joseph Lubertazzi, Esq.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey
*Attorneys for Lucent Technologies, Inc.*

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

        This is a contested matter concerning the objection by Debtor Adelphia Communications

Corp. ("<u>Adelphia</u>" or "<u>ACC</u>") to the proof of claim of Lucent Technologies, Inc. ("<u>Lucent</u>") in

the amount of $44,721,519.78.  Lucent's claim is based upon several legal theories, but primarily

Section 17-303 of Delaware's Revised Uniform Limited Partnership Act, found in Title 6,

Chapter 17 of the Delaware Code (hereafter, "Section 17-303").  Under Section 17-303 Lucent

seeks to hold Adelphia liable for the debts of Devon Mobile Communications, L.P. ("Devon"), a

limited liability partnership, under an October 19, 2000 agreement between Devon and Lucent.

At the heart of this proceeding is Adelphia's contention that, under Section 17-303(a), a

third party's actual knowledge of limited partnership status automatically defeats a claim of *de

facto* general partnership liability.  Section 17-303(a), captioned "Liability to third parties,"

states:

> A limited partner is not liable for the obligations of a limited partnership unless he
> or she is also a general partner or, in addition to the exercise of the rights and
> powers of a limited partner, he or she participates in the control of the business.
> However, if the limited partner does participate in the control of the business, he
> or she is liable only to persons who transact business with the limited partnership
> reasonably believing, *based upon the limited partner's conduct*, that the limited
> partner is a general partner.

(emphasis added).  This Court holds that for the purposes of Section 17-303(a), only the limited

partner's conduct is relevant because the statute specifically directs in determining a third party's

reasonable belief, the analysis must be "based upon the limited partner's conduct."  Summary

judgment is denied because material issues of fact exist as to whether the conduct of ACC would

support a reasonable belief that ACC was a general partner.

## JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. §

157(a) and the Standing Order of Reference signed by Acting Chief Judge Robert J. Ward dated

July 10, 1984.  The allowance or disallowance of claims against a bankruptcy estate is a "core

proceeding" pursuant to 28 U.S.C. § 157(b)(2)(B).  By order dated April 11, 2006 (ECF Docket

No. 10399), Bankruptcy Judge Robert E. Gerber transferred certain issues in the Adelphia

bankruptcy cases, including the Lucent claims objection, to this Court for hearing and

determination.

## BACKGROUND

On June 25, 2002, Adelphia and various affiliates commenced cases under Chapter 11 of the Bankruptcy Code.[1]  Lucent Technologies, Inc. ("Lucent") filed proof of claim No. 135800, dated September 9, 2003 in the amount of $44,721,519.78 for "telecommunication products" (the "Proof of Claim").  The Proof of Claim noted: "Collateral is in the possession of Devon Mobile Communications, L.P."  In a four-page statement annexed as part of its Proof of Claim, Lucent alleged the following relevant facts:

- Adelphia is indebted to Lucent in connection with a General Agreement for Personal Communications Service Systems executed October 19, 2000 (the "General Agreement").
- Adelphia is responsible for payment for all equipment and services Lucent provided to Devon.
- By letter dated August 7, 2002 Lucent terminated the General Agreement effective August 8, 2002.
- Adelphia owes Lucent $16,800,516.27 in connection with unpaid invoices for products that were, as of the date of the Proof of Claim, installed in Devon's network.
- Adelphia also owes Lucent at least $12,363,341.31 in connection with products that were, as of the date of the Proof of Claim, installed in Devon's network but not invoiced by Lucent.
- Adelphia owes Lucent $15,557,622.20 in connection with orders placed for equipment by Devon which had not, as of the date of the Proof of Claim, been invoiced by Lucent and was located in a Lucent-controlled warehouse.

Adelphia objected to Lucent's Proof of Claim as part of its "First Omnibus Objection to the Allowance of Certain Claims" (ECF Docket No. 6087; hereafter, the "Claims Objection").  On December 10, 2004, Lucent filed a Response to the Claims Objection (ECF Docket No. 6584; hereafter, the "Response").  The Response alleges the following relevant facts:

- Lucent has conducted business with ACC and its affiliates since at least 1997.

---

[1]     As these bankruptcy cases were commenced prior to October 17, 2005, the amendments to the Bankruptcy Code made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub. L. 109-8) do not apply.

- On or about November 3, 1995, Devon G.P., Inc. and ACC, both Delaware corporations, entered into an Agreement of Limited Partnership to create Devon, a Delaware limited partnership. [2]

- Under the General Agreement with Devon, Lucent received hundreds of purchase orders to deliver products and licensed materials to various locations where Devon operated its business. The vast majority, if not all, of these purchase orders, were on a form indicating the identity of the entity issuing the purchase orders as "Adelphia."

- At all times, Lucent looked to "Adelphia" for payment of the invoices for product and licensed materials delivered to Devon. In fact, ACC asked Lucent to forward all Devon Invoices to Adelphia at an address in Coudersport, Pennsylvania.

- Lucent asserts that none of the Devon invoices were paid by Devon. To the extent that Devon invoices were paid, Lucent received payment from ACC or from another ACC affiliate at ACC's direction.

- From the inception of the partnership with Devon, Lucent alleges that ACC was Devon's sole source of operating capital and caused Devon to be undercapitalized to conduct the business for which it was formed. All monies necessary to operate Devon's business and pay Devon's creditors were provided by ACC.

- According to Lucent: "Devon operated merely as a front for ACC, and ACC so controlled Devon's business as to make it inequitable for ACC not to pay the debts it caused Devon to incur to Lucent. Because Devon was operated as the alter ego or mere instrumentality of ACC, ACC is liable to Lucent for the entire amount of all unpaid Devon Invoices."

- Lucent claims that, due to the manner in which ACC caused the Devon partnership to be created and operated, ACC should be deemed to have acted in the capacity of a general partner of Devon, and should therefore be liable for the Devon's debts to Lucent. Specifically, Lucent contends: "In light of its course of business with Lucent, ACC should be held liable for all unpaid Devon Invoices pursuant to the doctrines of implied contract, quasi contract and quantum meruit."

At the Court's request, on March 14, 2007 Lucent filed a "Preliminary Pre-Trial Submission" setting forth the facts and law that it would rely upon at trial. (ECF Docket No. 13263; hereafter, the "Preliminary Pre-Trial Submission"). In the Preliminary Pre-Trial Submission, Lucent argues that Adelphia is liable to Lucent under the following legal theories:

---

[2]    The sole general partner of Devon was Devon G.P. Inc., with a 51.1% interest. Devon G.P. was owned by Lisa-Gaye Shearing Mead.

(1) Section 17-303, (2) alter ego, (3) contract implied in fact, (4) quasi contract, and (5) quantum meruit.

On June 15, 2007, Adelphia moved for summary judgment (ECF Docket No. 13633), contending that Lucent had actual knowledge of Adelphia's status as a limited partner of Devon. Adelphia argues that Lucent's actual knowledge defeats a claim under Section 17-303. Moreover, Adelphia argues that Lucent's equitable and breach of contract claims should fail, because: "There is no room within the plain language of Section 303(a) for Lucent's Equitable Claims or even its new breach of contract claim.  If Lucent cannot recover under Section 303(a), it cannot recover at all." ECF Docket No. 13787, p. 31 (emphasis in original).

## STANDARDS FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56(c) (applicable to this contested matter by Fed. R. Bankr. P. 7056 and 9014(c)), summary judgment should be granted to the moving party if the Court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)).  A movant has the initial burden of establishing the absence of any genuine issue of material fact. 477 U.S. at 322-23.

## DISCUSSION

### I.  Partnerships in General

In the usual partnership arrangement, commonly referred to as a general partnership, all partners are personally liable for all of the obligations of their partnership. *See, e.g.*, the discussion in *Great Lakes Chem. Corp. v. Monsanto Co.*, 96 F. Supp. 2d 376, 391 (D. Del. 2000):

> General partnerships in Delaware are formed pursuant to the Delaware Revised Uniform Partnership Act, 6 Del.C. § 15-101 *et seq.*  Each partner has equal rights in the management and conduct of the partnership business and affairs. 6 Del.C. § 15-401(f).  In general, all partners are liable jointly and severally for all obligations of the partnership. 6 Del.C. § 15-306(a).  Because partners have equal rights in the management of general partnerships, and because they are not protected by limited liability, courts consistently state that partners in general partnerships are unlikely to be passive investors who profit solely on the efforts of others.

A limited liability partnership, such as Devon, differs in the following sense:

> Limited partnerships in Delaware are formed pursuant to 6 Del.C. § 17-101 *et seq.*  Limited partnerships are comprised of general partners and limited partners.  General partners in limited partnerships have all the powers and duties of general partners in general partnerships, and are liable for the debts of the partnership. 6 Del.C. § 17-403(b).  Limited partners have limited liability, but become liable as general partners if they take part in the control of the business. *See* 6 Del.C. § 17-303(a); Unif. Ltd. Partnership Act (1916) § 7, 6A U.L.A. 336 (1995).  A limited partner may advise a general partner with respect to the business of the limited partnership, or cause a general partner to take action by voting or otherwise, without losing his limited liability. *See* 6 Del.C. § 17-303(b)(2).  In cases involving transactions of interests in limited partnerships, wherein the limited partners exercised no managerial role in the partnership's affairs, courts treat the limited partners as passive investors, and find that the membership interests of limited partners constitute securities under federal law. *See, e.g., Mayer v. Oil Field Systems Corp.,* 721 F.2d 59, 65 (2d Cir.1983).  **Where, however, a limited partner is found to have exercised substantial control over the management of the partnership, courts find that the limited partner has not profited solely from the efforts of others, and rule that the interest in the partnership is not a security.**

96 F. Supp. 2d at 391 (emphasis added). *See also Harper v. Delaware Valley Broadcasters, Inc.*, 743 F. Supp. 1076, 1089 (D. Del. 1990) ("Inability to control the business of the Partnership

- 6 -

combined with limited liability for the obligations incurred in the business of the Partnership are precisely the attributes of a limited partner."). Thus, unlike general partnerships, a limited partner in a limited liability partnership is presumed to be a "passive investor" and accordingly enjoys limited liability similar to that of a shareholder in a corporation. To the extent that a limited partner exceeds the role of passive investor and exercises control over the business, protection as a limited partner may be forfeited because the rationale for insulation from liability no longer applies. *See, e.g., Holzman v. De Escamilla*, 197 P.2d 833, 834 (Cal. Ct. App. 1948) (limited partners liable as general partners where, among other things, they had "absolute power to withdraw all the partnership funds in the banks without the knowledge or consent of the general partner" and "could take control of the business from [the general partner] by refusing to sign checks for bills contracted by him and thus limit his activities in the management of the business").

## II. Section 17-303 of the Delaware Revised Uniform Limited Partnership Act

Against this background, the Court must interpret Section 17-303, which governs the circumstances under which a limited partner may be liable for the obligations of the limited partnership. Section 17-303(a) states:

> (a) A limited partner is not liable for the obligations of a limited partnership unless he or she is also a general partner or, in addition to the exercise of the rights and powers of a limited partner, he or she participates in the control of the business. However, if the limited partner does participate in the control of the business, he or she is liable only to persons who transact business with the limited partnership reasonably believing, based upon the limited partner's conduct, that the limited partner is a general partner.

Delaware's version of Section 17-303 is based on Section 303 of the Revised Uniform Limited Partnership Act of 1976, as amended in 1985 ("Uniform Act").

A limited partner that does not participate in control of the business has nothing to fear from Section 17-303. Where a limited partner participates in control by taking or attempting

- 7 -

actions that are not within the "safe harbor" under Section 17-303(b)[3], the limited partner may be

liable to third parties who transacted business with the limited partnership and reasonably

---

[3]        Section 17-303(b) states:

(b) A limited partner does not participate in the control of the business within the meaning of subsection (a) of this section by virtue of possessing or, regardless of whether or not the limited partner has the rights or powers, exercising or attempting to exercise 1 or more of the following rights or powers or having or, regardless of whether or not the limited partner has the rights or powers, acting or attempting to act in 1 or more of the following capacities:

(1) To be an independent contractor for or to transact business with, including being a contractor for, or to be an agent or employee of, the limited partnership or a general partner, or to be an officer, director or stockholder of a corporate general partner, or to be a partner of a partnership that is a general partner of the limited partnership, or to be a trustee, administrator, executor, custodian or other fiduciary or beneficiary of an estate or trust which is a general partner, or to be a trustee, officer, advisor, stockholder or beneficiary of a business trust or a statutory trust which is a general partner or to be a member, manager, agent or employee of a limited liability company which is a general partner;

(2) To consult with or advise a general partner or any other person with respect to any matter, including the business of the limited partnership, or to act or cause a general partner or any other person to take or refrain from taking any action, including by proposing, approving, consenting or disapproving, by voting or otherwise, with respect to any matter, including the business of the limited partnership;

(3) To act as surety, guarantor or endorser for the limited partnership or a general partner, to guaranty or assume 1 or more obligations of the limited partnership or a general partner, to borrow money from the limited partnership or a general partner, to lend money to the limited partnership or a general partner, or to provide collateral for the limited partnership or a general partner;

(4) To call, request, or attend or participate at a meeting of the partners or the limited partners;

(5) To wind up a limited partnership pursuant to § 17-803 of this title;

(6) To take any action required or permitted by law to bring, pursue or settle or otherwise terminate a derivative action in the right of the limited partnership;

(7) To serve on a committee of the limited partnership or the limited partners or partners or to appoint, elect or otherwise participate in the choice of a representative or another person to serve on any such committee, and to act as a member of any such committee directly or by or through any such representative or other person;

(8) To act or cause the taking or refraining from the taking of any action, including by proposing, approving, consenting or disapproving, by voting or otherwise, with respect to 1 or more of the following matters:

a. The dissolution and winding up of the limited partnership or an election to continue the limited partnership or an election to continue the business of the limited partnership;

b. The sale, exchange, lease, mortgage, assignment, pledge or other transfer of, or granting of a security interest in, any asset or assets of the limited partnership;

c. The incurrence, renewal, refinancing or payment or other discharge of indebtedness by the limited partnership;

d. A change in the nature of the business;

e. The admission, removal or retention of a general partner;

believed, "based upon the limited partner's conduct," that the limited partner is a general partner.

The limited partner's participation in control is a threshold issue. Only after it has been

determined that the limited has participated in the control of the business, the conduct of the

limited partner will be examined to consider whether such conduct would support a reasonable

belief in the third party "that the limited partner is a general partner."

   At the heart of ACC's summary judgment motion is its contention that Lucent had actual

knowledge that ACC was the limited partner of Devon, defeating Lucent's claim that it had a

reasonable belief that ACC was a general partner. ACC contends that Lucent's "actual

knowledge" is not disputed, making its own alleged conduct irrelevant. *See* Reply to Lucent's

---

f. The admission, removal or retention of a limited partner;

g. A transaction or other matter involving an actual or potential conflict of interest;

h. An amendment to the partnership agreement or certificate of limited partnership;

i. The merger or consolidation of a limited partnership;

j. In respect of a limited partnership which is registered as an investment company under the Investment Company Act of 1940, as amended (15 U.S.C. § 80a-1 et seq.), any matter required by the Investment Company Act of 1940, as amended, or the rules and regulations of the Securities and Exchange Commission thereunder, to be approved by the holders of beneficial interests in an investment company, including the electing of directors or trustees of the investment company, the approving or terminating of investment advisory or underwriting contracts and the approving of auditors;

k. The indemnification of any partner or other person;

l. The making of, or calling for, or the making of other determinations in connection with, contributions;

m. The making of, or the making of other determinations in connection with or concerning, investments, including investments in property, whether real, personal or mixed, either directly or indirectly, by the limited partnership; or

n. Such other matters as are stated in the partnership agreement or in any other agreement or in writing;

(9) To serve on the board of directors or a committee of, to consult with or advise, to be an officer, director, stockholder, partner, member, manager, trustee, agent or employee of, or to be a fiduciary or contractor for, any person in which the limited partnership has an interest or any person providing management, consulting, advisory, custody or other services or products for, to or on behalf of, or otherwise having a business or other relationship with, the limited partnership or a general partner of the limited partnership; or

(10) Any right or power granted or permitted to limited partners under this chapter and not specifically enumerated in this subsection.

Statement of Additional Disputed Material Facts to be Tried (ECF Docket No. 13784), p. 2, 8, 9,

11-20.  Exhibit 57 to Adelphia's "Appendix to Supplemental Statement of Uncontested Facts"

(ECF Docket No. 13784) is an executive summary dated July 25, 1997 and prepared by Lucent,

acknowledging: "The Company's [*i.e.*, Devon's] limited partner is Adelphia Communications

Corporation ('Adelphia[')]."  Section 17-208 of Delaware's Revised Uniform Limited

Partnership Act states:

> **§ 17-208. Notice**
>
> The fact that a certificate of limited partnership is on file in the Office of the
> Secretary of State is notice that the partnership is a limited partnership and is
> notice of all other facts set forth therein which are required to be set forth in a
> certificate of limited partnership by § 17-201(a)(1)-(3) and by § 17-202(f) of
> this title and which are permitted to be set forth in a certificate of limited
> partnership by § 17-218(b) of this title.

The parties agree that ACC was listed as a limited partner in the "Agreement of Limited

Partnership of Devon Mobile Communications, L.P." dated November 3, 1995, and that Devon

filed a Certificate of Limited Partnership with the Secretary of State for the State of Delaware on

June 13, 1995. *See* Adelphia's "Statement of Undisputed Facts" (ECF Docket No. 13634), ¶¶36-

37; Lucent's "Response to the Statement of Uncontested Facts" (ECF Docket No. 13704), ¶¶36-

37.  It appears that Lucent had actual knowledge of ACC's status as a limited partner, and for the

purposes of this ruling the Court assumes Lucent did have actual knowledge.

Adelphia's contention that Lucent's actual knowledge is fatal might be correct if Section

17-303(a) stated that limited partners who participate in control will be liable only to persons

who transact business with the limited partnership "reasonably believing … that the limited

partner is a general partner."  If that was all that Section 17-303 said, the Court would be free to

consider all factors that had a bearing on a third party's reasonable belief, including the third

party's actual knowledge.  ACC's reading, however, omits six important words in Section 17-

303(a) following "reasonable belief." The reasonable belief is to be "based upon the limited

partner's conduct." Thus, Section 17-303(a) requires the Court to determine Lucent's reasonable

belief based upon conduct of ACC, not Lucent.

Important to the analysis is the focus of Section 17-303 is at all times on the conduct of

the limited partner. At first glance, it may seem illogical to ignore the actual knowledge of the

third party. Under this interpretation of Section 17-303, a third party could be held to have a

"reasonable belief" that a limited partner was acting as the *de facto* general partner

notwithstanding the fact that third party actually knew of the limited partner's status in public

filings. Yet that is what the plain language of Section 17-303(a) mandates by inclusion of the

words "reasonably believing, **based upon the limited partner's conduct**, that the limited

partner is a general partner." (emphasis added). Adelphia argues in its Reply Memorandum of

Law: "It goes without saying that one cannot have actual knowledge of one thing (ACC was a

limited partner of Devon) and simultaneously reasonably believe the opposite (ACC was a

general partner of Devon)." ECF Docket No. 13787, p. 21. Lucent counters:

> Actual knowledge of "on paper" status as limited partner proves nothing,
> especially when Lucent introduced plenty of evidence to show that ACC's own
> conduct gave Lucent a reasonable belief that ACC was acting as the de facto
> general partner of Devon. It is just another example in the law that documents say
> one thing, but subsequent conduct of the parties [that] is completely inconsistent
> with the documents … supersedes the words used in them.

"Sur-Reply In Further Opposition to Debtor's Motion for Summary Judgment," ECF Docket No.

13795, p. 6.

It is possible for an entity to be designated as a limited partner as a matter of public

record and to act in a contrary manner by participating in control of the limited partnership

business. This is precisely the issue addressed by Section 17-303, which sets forth the

circumstances under which a limited partner's conduct will render the limited partner liable to

third parties. Section 17-303 implicitly addresses the question of which should dominate – the status of the party as a limited partner according to public record, or the way that the limited partner actually conducts itself on a day-to-day basis? The answer, according to the plain meaning of Section 17-303(a), is that only the limited partner's conduct is relevant. Thus, regardless of how the limited partner may be designated in the partnership agreement and certificate (and regardless of whether the third party is aware of that designation), if the limited partner's actual conduct would support a reasonable belief that the limited partner is a *de facto* general partner, that conduct will render the limited partner liable to third parties, regardless of the limited partner's prophylactic declaration in public filings that it is merely a limited partner. Were it otherwise, a limited partner could insulate itself from its own acts of control simply by informing third parties of its limited partner status, leaving it free to engage in conduct contrary to its nominal status and participate in control of the partnership with no fear of liability. "Limited" liability under these circumstances would more closely resemble "absolute" liability.

The Supreme Court instructs: "courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 461-462, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) quoting *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 253-254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (quoting in turn *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981)). *See also*, *Estate of Watts v. Blue Hen Insulation*, 902 A.2d 1079, 1083 (Del. 2006) ("courts assume that the legislature intended all words in the statute to have meaning").

The Court has found other sections in the Delaware Revised Uniform Limited Partnership Act ("Delaware Act") indicating that, where the legislature intended the consideration of the

actual knowledge of a third party, it knew how to do so.  First, the word "Knowledge" is included in the "Definitions" section in the Delaware Act: "'Knowledge' means a person's actual knowledge of a fact, rather than the person's constructive knowledge of the fact." 6 Del. C. § 17-101(6).

Section 17-304 of the Delaware Act, the section immediately following Section 17-303, states that a person who contributes to a partnership and "erroneously but in good faith believes that he or she has become a limited partner" will be "liable as a general partner to any third party who transacts business with the partnership" under certain circumstances, so long as "the third party *actually believed* in good faith that such person was a general partner at the time of the transaction, acted in reasonable reliance on such belief and extended credit to the partnership in reasonable reliance on the credit of such person." (emphasis added).  The Delaware Act draws a distinction between reasonable belief based upon the limited partner's conduct in Section 17-303 and actual belief, in good faith, in Section 17-304.

Section 303(d) of the Uniform Act states: "A limited partner who knowingly permits his [or her] name to be used in the name of the limited partnership … is liable to creditors who extend credit to the limited partnership *without actual knowledge* that the limited partner is not a general partner." (emphasis added).  The version of the Uniform Act adopted by Delaware, Section 17-303(d), does not include this provision and directs the opposite: "A limited partner does not participate in the control of the business within the meaning of [Section 17-303(a)] by virtue of the fact that all or any part of the name of such limited partner is included in the name of the limited partnership."

In *Bethlehem Shipbuilding Corp. v. Mullen*, 119 A. 314 (1922), the Superior Court of Delaware interpreted a worker's compensation statute.  The Superior Court observed that in the

statute, the word "payments" was limited by the words "of compensation," so that "it would not

be reasonable construction of the statute to say that payments of all kinds should be considered

as compensation, for to so construe the law would be to give little or no meaning to the words 'of

compensation,' and it cannot be presumed that the Legislature did a useless thing when what

they did do can be given a useful purpose and meaning by a fair and reasonable construction."

*Id.* at 318.  The same is true here.  If the Court were to include the knowledge of a third party in

its consideration of "reasonable belief" it would give little or no meaning to the specific

requirement in Section 17-303 that the Court's consideration should be "based upon the limited

partner's conduct."

According to the Supreme Court of Delaware: "If a literal interpretation of a statute

leaves a result inconsistent with the general statutory intention, such interpretation must give way

to general intent." *Hayward v. Gaston*, 542 A.2d 760, 768 (Del. 1988).  This Court does not

believe that the literal interpretation of Section 17-303 is at odds with the general statutory

intention.  On the contrary, reading an "actual knowledge" exception into Section 17-303(a)

would invite abuse of the limited partnership form and allow limited partners to control the

partnership with impunity.  The fact that Section 17-303(a) focuses on the limited partner's

conduct instead of either the limited partner's record status or the actual knowledge of a third

party emphasizes the underlying rationale for protecting limited partners in the first place.  The

protections granted to a limited partner under the statute apply only to the extent that the limited

partner's actions are consistent with its limited role; when the limited partner acts in another

capacity, the protections afforded to a limited partner no longer apply.  The logic of the Court's

interpretation may be expressed more colloquially through the "duck test": "That which looks

like a duck, walks like a duck, and quacks like a duck will be treated as a duck even though some

would insist upon calling it a chicken." *Tidelands Marine Serv. v. Patterson*, 719 F.2d 126, 128

n. 3 (5th Cir. 1983); *see also BCM Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1337 n. 28

(11th Cir. 1998) (following the "time-tested adage: if it walks like a duck, quacks like a duck, and

looks like a duck, then it's a duck" and noting: "The 'duck test' has received wide support from

the courts."). When a limited partner looks, walks and talks like a general partner, such conduct,

when it amounts to participation in control of the business, renders the limited partner liable as a

general partner.

## III.  Cases Discussing Liability of Limited Partners

In *Tapps of Nassau Supermarkets, Inc. v. Linden Blvd.*, 661 N.Y.S.2d 223 (N.Y. App.

Div. 1st Dep't 1997), the plaintiff, Tapps, sued Neuman, an individual acting as a limited partner

of Linden, the limited liability partnership (LLP), for damages incurred when evicted under a

sublease with the LLP, allegedly due to the failure of the LLP and Neuman to pay the

overlandlord. The Appellate Division reversed the trial court's award of summary judgment to

Neuman and interpreted Delaware law and Section 17-303(a). The Appellate Division found

that although some of Neuman's acts were within the safe harbor in Section 17-303(b), Tapps

could point to "other factors to support its belief that Neuman ignored the general partner and

acted in her individual capacity." 661 N.Y.S.2d 224-225. For example:

> The affidavits of Tapps' president and chief financial officer establish that
> Neuman initially introduced herself as the "landlord" during lease negotiations,
> she negotiated the sublease on behalf of Linden and acted as its attorney, she
> alone met with Tapps' representatives during a dispute concerning overcharges
> and she was the sole representative of Linden who collected the rent and arranged
> for repairs on the premises. Tapps asserts that these activities by Neuman, to the
> exclusion of all other Linden representatives, justified its reasonable reliance that
> Neuman was acting as Linden's principal.

*Id.* at 225.  Adelphia attempts to distinguish *Tapps* by arguing that in that case, Neuman was the only representative to personally deal with Tapps.[4]  Adelphia's Reply Memo of Law, ECF Docket No. 13787, p. 24-25.  This does appear to be the reason why the Appellate Division ruled that the cause of action should not have been dismissed on summary judgment, but this Court does not believe that *Tapps* stands for the proposition that this was the only factual showing that would have supported a claim under Section 17-303.  Rather, *Tapps* illustrates the fact-intensive nature of any inquiry under Section 17-303.  Adelphia also argues that "there was no indication that the *Tapps* plaintiff had actual knowledge of the limited partner's status as such."  Adelphia's Reply Memorandum of Law, ECF Docket No. 13787, p. 25.  The First Department held that "it cannot be stated as a matter of law that [Neuman] did not participate in the control of [the LLP], or that Tapps' stated belief that [Neuman] was acting as [the LLP's] general partner was unreasonable." *Id.* at 239.  *Tapps* did not discuss any act of the plaintiff and appeared to focus on the conduct of Neuman, consistent with the requirement in Section 17-303(a) that courts' consideration should be "based upon the limited partner's conduct."

The chief cases cited by Adelphia will be addressed here. *See* Adelphia's Memorandum of Law in Support of Motion for Summary Judgment, ECF Docket No. 13633, pp. 16-24.

*Zeiger v. Wilf*, 755 A.2d 608 (N.J. Super. Ct. App. Div. 2000) interpreted New Jersey's version of Section 17-303(a), which is identical to Delaware's.  The court granted summary judgment in favor of the defendant limited partner because there was no "reliance" on the limited partner's actions, "which is a necessary basis for a limited partner's liability." 755 A.2d at 618. The New Jersey court stated:

---

[4]    During oral argument on this motion Adelphia attempted to further distinguish the *Tapps* case by noting that the First Department found that case to be "factually similar" to *Gonzalez v. Chalpin,* 77 N.Y.2d 74, 77, 564 N.Y.S.2d 702 (1990), a "dual capacity" case in which the limited partner was also the president and sole shareholder of the general partner.

> It bears repeating that plaintiff, an insider in the project, does not claim he was
> ever misled as to the entities with whom he was dealing.  Plaintiff is described as
> a sophisticated, experienced developer and businessman.  He does not deny that
> description.  He does not claim that he ever sought or obtained any individual
> guarantee or promise of payment from [the limited partner]….  Nor does plaintiff
> deny that he understood completely that he was dealing with a limited partnership
> and a corporation.  He does not deny his understanding that those entities, by their
> very nature, provide limited resources and limited recourse for parties with whom
> they contract.

*Id.* at 618.  The court put great emphasis on the fact that the plaintiff had not been mislead and could not demonstrate that he "relied on some impression" that the limited partner was a general partner, finding it "significant that plaintiff does not rest his argument so much on the powers and functions exercised by [the limited partner], as on the manner in which he exercised those functions."  The court explained that:

> [T]he argument points mainly to [the limited partner's] carelessness in not
> consistently and specifically identifying himself as an officer … when he acted …
> or signed documents on behalf of the limited partnership. The argument, in short,
> refers more to form than to substance. It lacks force because, regardless of [the
> limited partner's] alleged carelessness, plaintiff was at all times fully aware of
> what [the limited partner] was doing and how he was doing it. A failure to comply
> with some designated formality might have had some significance if, at any time
> or in any way, it misled plaintiff or prejudiced him. But, as we have noted several
> times, that is simply not the case.

*Id.* at 619 (footnote omitted).  As discussed below, facts are in dispute in the case at bar that may show, based on ACC's conduct, Lucent reasonably believed that ACC functioned as the *de facto* general partner of Devon.  The facts alleged by Lucent in this case, if true, do not appear to be merely a question of "form over substance" or "failure to comply with some designated formality" as was apparently the case in *Zeiger*.

*In re LJM2 Co-Investment, L.P.*, 866 A.2d 762, 772 (Del. Ch. 2004) observed that the complaint in that case "does not allege that the Limited Partners held themselves out as general partners of LJM2" and concluded: "It follows then that they could not have caused a third party to transact business reasonably believing that they were general partners."  The court also stated:

> It is important to note that the plaintiffs are not pursuing the defendants on a theory of general partner (or even quasi-general partner) liability.  The plaintiffs are pursuing the defendants only for money that was committed to LJM2 in the original Partnership Agreement.  **The court, therefore, does not address the possibility that the actions of the Limited Partners somehow exposed them to the liability of the limited partnership** or of the general partner.

866 A.2d at 773 (emphasis added).

In *Folgers Architects Ltd. v. Kerns*, 612 N.W.2d 539 (Neb. Ct. App. 2000), *aff'd in part, rev'd in part on other grounds*, 633 N.W.2d 114 (Neb. 2001), the appellate court reversed the trial court and held that the limited partner was not liable (under Nebraska's identical version of Section 17-303(a)) where the contract clearly reflected that the limited partner signed in that capacity.  Although the limited partner "extensively participated in the control of the business despite his status as a limited partner," the plaintiff admitted that he was aware that (1) his contract was with the LLP, (2) the limited partner only signed in that capacity, and (3) the limited partner never personally signed the contract or provided a personal guaranty. *Id.* at 550. Thus, the appellate court concluded, "we cannot say that [the third party] reasonably believed that based on [the limited partner's] conduct that [the limited partner] was a general partner." *Id.* at 550-51.  The court appears to have focused on acts of the limited partner that the third party was aware of.  In that case, the conduct of the limited partner known to the third party was consistent with the role of limited partner and therefore insufficient to support a reasonable belief.  This Court agrees with the *Folgers Architects* case to the extent that the decision focuses on conduct of the limited partner that was known to the third party.  To the extent that the Court of Appeals of Nebraska's decision was based on the actual knowledge of the third party's limited partner status in public records (rather than a belief based upon the limited partner's conduct), this Court would respectfully disagree with such an interpretation of the statute.

*Mount Vernon Sav. & Loan Ass'n v. Partridge Assocs.*, 679 F.Supp. 522, 527 (D. Md.

1987) is not availing to Adelphia.  First, that case construed a different version of the Uniform

Act:

> Under Section 303(a) (codified in Maryland as Section 10-303(a)), a limited
> partner who disregards the limited partnership form to such an extent that he
> becomes substantially the same as a general partner has **unlimited liability**
> **regardless of a plaintiff's knowledge of his role**. At the same time, a limited
> partner may have unlimited liability for exercising less than a general partner's
> power if the fact that he acted as more than a limited partner **was actually known**
> **to the plaintiff**.

(emphasis added).  The *Mount Vernon* court did focus on actual knowledge, but not of the kind

Adelphia urges.  The "actual knowledge" considered in the *Mount Vernon* case had nothing to do

with the limited partner's status in public filings, but whether **conduct** of the limited partner "as

more than a limited partner was actually known to third parties." *Id.*  The standard in *Mount*

*Vernon* was not met because the court found that the documents promoting the business venture

at issue "clearly" identified the limited partner as such, and the third party "presented no

evidence to prove" that the limited partner "had actual knowledge that [the limited partner] was

acting as something more than a limited partner." *Id.*

Clear identification of limited partnership status in transactional or business documents is

a valid consideration under Delaware's version of Section 17-303(a) if it constitutes conduct of

the limited partner.  The evidence submitted to the Court so far in this case does not indicate that

ACC clearly identified itself as a limited partner in documents and correspondence that it

submitted to Lucent in connection with the General Agreement, and Lucent has alleged acts of

control (*i.e.* conduct) inconsistent with ACC's limited partnership status.  As explained in the

previous section, a party identifying itself as a limited partner to a third party will not necessarily

insulate itself from liability if the limited partner engages in conduct inconsistent with that status.

In *Hillier v. M.I.S.I., LP*, 2006 WL 299053, *5 (C.C.P. Phila. Cty. Jan. 27, 2006) the

Court of Common Pleas of Pennsylvania held, with no discussion of any governing law, that the

plaintiff "may not raise an estoppel argument to convert a limited partner into a general partner

on the basis of a misnomer" because the agreement at issue "clearly stated that the buyer in the

contract was a limited partnership" and the plaintiff had not testified that she signed the

agreement based upon a belief that the buyer was a general partner.  The Court did not cite to any

governing statute and based its decision on the following legal reasoning:

> "A limited partnership in Pennsylvania is an entity in which one or more persons,
> with unlimited liability, manage the partnership, while one or more other persons
> only contribute capital; these latter partners have no right to participate in the
> management and operation of the business and assume no liability beyond the
> capital contributed." *See Freedman v. Philadelphia Tax Review Board,* 212
> Pa.Super. 442, 446, 243 A.2d 130, 133 (1968). The limited partner "is in a
> position analogous to that of a corporate shareholder, an investor who likewise
> has limited liability and no voice in the operation of an enterprise." *Id.* at 134.

> A limited partner "is not liable for the obligations of the limited partnership." *See
> Commonwealth, Dept. of Revenue for Bureau of Accounts Settlement v.
> McKelvey,* 526 Pa. 472, 476, 587 A.2d 693, 695 (1991), *citing Freedman,* 212
> Pa.Super. 442, 243 A.2d 130.

Because Delaware's version of Section 17-303(a) provides a different standard, *Hillier* is not

persuasive.[5]

---

[5]      The case law relied upon by *Hillier* appears to be outdated.  *Commonwealth, Dept. of Revenue for Bureau of Accounts Settlement v. McKelvey,* 587 A.2d 693 (1991) stated:

> A limited partner has no role in the exercise, control or management of the limited partnership
> business. Limited partners, by statutory definition, do not take part in the control or management
> of partnership business.

> Section 521 of the Uniform Limited Partnership Act which was in effect at the time of the events
> giving rise to this litigation provided as follows:

> A limited partner shall not become liable as a general partner unless, in addition to the exercise of
> his rights and powers as a limited partner, he takes part in the control of the business.

> 59 Pa.C.S.A. § 521 (now repealed).

587 A.2d at 695.

> Finally, it is the law of this Commonwealth that a limited partner is not liable for the
> obligations of the limited partnership. 59 Pa.C.S.A. § 511 (now repealed).

*Frigidaire Sales Corp. v. Union Props., Inc.*, 562 P. 2d 244 (Wash. 1977) construed an older uniform limited liability partnership statute that provided: "A limited partner shall not become liable as a general partner unless, in addition to the exercise of his rights and powers as limited partner, he takes part in the control of the business." *Id.* at 245 n. 1.  That court considered actual knowledge of the plaintiff, but nothing in the statute precluded such a consideration.  A similar case is *Alzado v. Blinder, Robinson & Co.*, 752 P.2d 544 (Colo. 1988) which construed an older statute that required consideration as to whether the limited partner "assumes control of the partnership business." *Id.* at 551-52.  The court ruled that **no evidence** supported the plaintiff's argument, and that the plaintiff "had no misconception concerning the function and role of [the defendant] as a limited partner only." *Id.* at 553.  The statute the *Alzado* court was interpreting left the court free to consider a party's actual knowledge, and the ruling was based upon a failure to establish an exercise of control under the facts of that case.

The court in *Marshack v. Mesa Farms, L.P. (In re Ridge II)*, 158 B.R. 1016 (Bankr. C.D. Cal. 1993) assumed that the limited partners controlled the LLP in question, but granted summary judgment in favor of the limited partners because the plaintiff, a bankruptcy trustee, could not demonstrate that creditors had been led to believe that the limited partners were acting as general partners.  The court noted that, in the absence of any evidence of such conduct, a limited partnership certificate had been recorded in accordance with California law, and "that alone, justifies the conclusion that the Limited Partners are just that." *Id*. at 1024, n. 6.  The Court believes that the *Marshack* case was decided based upon an absence of proof in the record.

*Fabry P'ship v. Christensen*, 794 P.2d 719 (Nev. 1990) held that the partners had substantially complied with the statutory provisions for creating a limited partnership.  In the

---

*Id.* (citing *Freedman v. Philadelphia Tax Review Board,* 212 Pa.Super. 442, 446, 243 A.2d 130, 133 (1968)).

- 21 -

course of the ruling, the court noted that there was no "participation or control by any of the limited partners." *Id*. at 720.  Issues relevant to Section 17-303(a) were not addressed in the decision except that the court added that the seller "knew from the outset" that the sale involved a limited partnership. *Id*. at 721.

Finally, Adelphia quotes from *J.C. Wattenbarger & Sons v. Sanders*, 30 Cal. Rptr. 910, 914 (Cal. Dist. Ct. App. 1963): "One may reasonably assume that the credit investigating arm of a modern business establishment would make rather extensive inquiries as to the participation and financial standing of those involved in a partnership business."  This is essentially a "constructive notice" argument, and a reasonable proposition.  The case, however, is not persuasive on the issue before the Court because it pre-dates the Revised Uniform Limited Partnership Act of 1976 and does not interpret Section 17-303(a) or a similarly worded statutory provision.  Adelphia's argument that Lucent is a sophisticated creditor and "Fortune 500" company does not require a different outcome.  Like the "actual knowledge" defense, it focuses on the wrong party.  Moreover, Adelphia's argument cuts both ways.  ACC is also a sophisticated party and presumably understood that if it engaged in conduct beyond the boundaries in Section 17-303, that conduct might render it liable to third parties.

## IV.  Material Disputed Facts Regarding Section 17-303

In support of summary judgment, Adelphia filed the Statement of Undisputed Facts (ECF Docket No. 13634) required by Local Bankruptcy Rule 7056-1.[6]  Lucent filed a "Response to the

---

[6]     Local Bankruptcy Rule 7056-1 contains the following requirements:

**Rule 7056-1      SUMMARY JUDGMENT**

(a) Unless the Court orders otherwise, no party shall file a motion for summary judgment without first seeking a pre-motion conference. The request for a pre-motion conference shall be made by letter, filed on the CM/ECF system, setting forth the issues to be presented in the motion and the grounds for relief.

Statement of Uncontested Facts" (ECF Docket No. 13704). Of the 141 paragraphs in Adelphia's

statement of undisputed facts, Lucent "disputes" at least 27 of the paragraphs, and "objects" to at

least 39 paragraphs.[7]  Many of Lucent's "objections" are based upon Adelphia's failure to

provide "citation to evidence which would be admissible" as required by Local Bankruptcy Rule

7056-1(e).  Lucent has demonstrated material issues of fact relating to its cause of action under

Section 17-303.[8]

---

(b) Upon any motion for summary judgment pursuant to Bankruptcy Rule 7056, there shall be annexed to the motion a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit the statement shall constitute grounds for denial of the motion.

(c) Papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short, and concise statement of additional material facts as to which it is contended that there is a genuine issue to be tried.

(d) Each numbered paragraph in the statement of material facts required to be served by the moving party shall be deemed admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.

(e) Each statement by the movant or opponent pursuant to subdivisions (b) or (c) of this rule, including each statement controverting any statement of material fact by a movant or opponent, shall be followed by citation to evidence which would be admissible.

[7]    See, e.g., the following paragraphs of Adelphia's Statement of Undisputed Facts: 13, 17, 19, 21, 28, 34, 49, 77, 81, 85, 86, 94, 95, 98, 102, 119, 124, 125, 126, 127 and 136.  Some contentions, such as the ones in paragraph 49 of Adelphia's Statement of Undisputed Facts, were later supplemented with citations to the record in Adelphia's "Supplemental Statement of Uncontested Facts," ECF Docket No. 13785.  The list set out in this footnote is a conservative list and does not include, among other things, paragraphs where Lucent initially "objected" to the contention for failure to cite to any evidence in the record and then conceded that Adelphia's contention was correct.

[8]    Material issues of fact include, but are not limited to, the following paragraphs of Adelphia's statement of undisputed facts: ¶37 (Though Lucent does not dispute that formal documents shows that Devon G.P. was the general partner of Devon, and that ACC was the sole limited partner of Devon, with a 49.9% interest.  Lucent contends in response: "In reality through its conduct, however, ACC was the general partner of Devon."); ¶43 (dispute whether build-out of Devon's network was accomplished with Devon employees or ACC and employees of Adelphia Business Solutions, Inc. or "ABIZ," a former affiliate of ACC); ¶53 (dispute whether an agreement was reached by Dawn Truax, for Lucent, and James Rigas, for Adelphia, and extent of Truax's subsequent involvement in contract negotiations); ¶55 (dispute whether Lucent personnel contacted ACC employees and principals in negotiating the Lucent-Devon Contract; Lucent contends Jeff Miller and other ABIZ employees negotiated with Lucent at the direction of ACC and the Rigases); ¶56 (dispute as to scope of involvement of Lou Ebert, Devon's General Manager, in negotiating technical and business terms of the Lucent-Devon Contract, as well as whether Lisa-Gaye Shearing Mead had been informed or involved in the contract negotiation process); ¶57 (dispute whether Jeff Miller was employed by ABIZ or ACC; Lucent contends that he negotiated the terms of the Lucent-Devon Contract because James Rigas asked him to do so); ¶64 (Lucent does not dispute that its contract was with Devon. Lucent contends that, given its history of dealing with Adelphia, "the fact that Lucent negotiated the contract with

In responding to Adelphia's Statement of Undisputed Facts, Lucent set forth 81

numbered paragraphs of additional facts that Lucent contends should be tried. (ECF Docket No.

13704; pp. 67-89).  On August 17, 2007 Adelphia filed a Reply to Lucent's Statement of

Additional Disputed Material Facts to be Tried. (ECF Docket No. 13784; hereafter, the "Reply").

By and large, Adelphia's Reply does not indicate which of these additional facts are disputed;

instead Adelphia contends that because Lucent had actual knowledge that ACC was the limited

partner of Devon, Lucent's additional factual contentions are irrelevant. *See* Reply, pp. 1-3, 8, 9,

11-20.  The Court's ruling today is that many of Lucent's additional factual contentions **will** be

relevant at trial.

For all of the foregoing reasons, ACC's motion for summary judgment on Lucent's cause

of action under Section 17-303 is denied.

## V.   The Remaining Causes of Action

### A.   Breach of Contract Claim

In its brief in opposition to summary judgment under the heading "Breach of Contract,"

Lucent argues:

> As one of its alternative theories of recovery, Lucent maintains that ACC is
> responsible for the payment of the debt on account of the purchase orders it issued
> for the Devon equipment.  ACC issued numerous purchase orders to Lucent with
> the instruction to bill "Adelphia" and ship to Devon.  Those purchase orders and
> Lucent's acceptance of them through, among other things, the shipment of the

---

James Rigas and other ACC representatives gave Lucent a reasonable belief that ACC would be paying for the equipment."); ¶87 (ACC contends that none of its employees participated in the Devon Implementation Meetings and cites to rosters, minutes and e-mails.  Lucent cites to deposition testimony to the contrary.); ¶91 (various disputes about the ordering process); ¶93 (dispute whether the Adelphia employee issuing written purchase orders "for Devon" was merely a scrivener and whether the act was ministerial); ¶114 (disputes include whether the response of Linda Pekarski, an employee in the ACC accounts payable department that "the address is correct" constituted an agreement that ACC would pay for the Devon equipment); ¶122 (Dispute whether the November 16, 2001 wire transfer from Devon to Lucent of $9,629,492.71 was approved by ACC, or whether Devon had authority over its own bank accounts.  Lucent contends that the money was sent after negotiations between Ed Babcock, an employee of either ACC or Adelphia, and Anthony Pacchia, on behalf of Lucent.); *See also* Lucent's July 20, 2007 Memo of Law, p. 34-36 (ECF Docket No. 13704) (setting forth the factual basis for Lucent's reasonable belief under Section 17-303).

> equipment constitutes a contract…. ACC's failure to pay constitutes a breach of
> that contract.  To the extent ACC claims that the purchase orders were only issued
> on behalf of Devon, that is a disputed material fact that cannot be resolved on a
> summary judgment motion.

ECF Docket No. 13704, pp. 48-49 (citations omitted).  Lucent provides few other details

regarding this claim.

Lucent did not assert a breach of contract claim in its Preliminary Pre-Trial Submission,

but on page one of that document, Lucent "reserve[d] the right to supplement the facts and legal

authorities which support its Claim (without expanding the legal theories to support recovery of

the Claim) in connection with any motion practice or a Final Pre-Trial Order."  Adelphia argues

Lucent's breach of contract claim should be barred because it was not asserted in the Preliminary

Pre-Trial Submission.  It is not clear if Adelphia is contending that it would be prejudiced by the

breach of contract claim.  To the extent that Lucent seeks to impose liability on ACC as a limited

partner of Devon on a lesser showing than what is set forth in Section 17-303(a), a breach of

contract theory will not suffice.  Lucent may (or may not) be able to show that its breach of

contract claim is directed against ACC not in its capacity as a limited partner but in some other

capacity.  The Court makes no determination at this time.

A party can move to conform its pleadings to the proof submitted at trial at any time. *See*

Fed. R. Civ. P. 15(b) (applicable to these proceedings by Fed. R. Bankr. P. 7015) and Fed. R.

Civ. P. 9014(c).[9]  If, in an effort to prove one of its other claims, Lucent presents evidence at trial

---

[9]      Rule 15(b) provides:

(b) Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by
express or implied consent of the parties, they shall be treated in all respects as if they had been
raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to
conform to the evidence and to raise these issues may be made upon motion of any party at any
time, even after judgment; but failure so to amend does not affect the result of the trial of these
issues.  If evidence is objected to at the trial on the ground that it is not within the issues made by
the pleadings, the court may allow the pleadings to be amended and shall do so freely when the
presentation of the merits of the action will be subserved thereby and the objecting party fails to
satisfy the court that the admission of such evidence would prejudice the party in maintaining the

that is sufficient to demonstrate a breach of contract, it is difficult to see how this would

prejudice Adelphia in presenting its case.  Amendments to conform pleadings to the evidence

under Rule 15(b) are to be liberally granted where necessary to bring about the furtherance of

justice and where the adverse party will not be prejudiced. *Mouser v. Caterpillar, Inc.*, 336 F.3d

656, 666 (8th Cir. 2003); *see also Brandon v. Holt*, 469 U.S. 464, 471 n. 19, 105 S.Ct. 873, 83

L.Ed.2d 878 (1985) (rule is "intended to promote the objective of deciding cases on their merits

rather than in terms of the relative pleading skills of counsel.") (quoting 6 C. Wright & A. Miller,

Federal Practice & Procedure § 1491).  Moreover, Adelphia and Lucent will have the

opportunity after trial to submit proposed findings of facts and conclusions of law, including

post-trial briefs, and Adelphia can raise all of its legal arguments to the breach of contract claim

at that time.

### B.  Statute of Frauds Defense

Adelphia argues that these equitable claims are barred by New York's statute of frauds,[10]

referring to a requirement under the New York General Obligations Law that "a special promise

to answer for the debt, default or miscarriage of another person" must be in writing and signed

by the party to be charged in order to be enforceable. New York Gen. Oblig. L. §5-701(a)(2).

Lucent's equitable claims against Adelphia are not necessarily restricted to the factual scenario

contemplated by the General Obligations Law, and the Court rejects Adelphia's argument that

they are barred by the statute of frauds.

---

party's action or defense upon the merits. The court may grant a continuance to enable the
objecting party to meet such evidence.

Fed. R. Bankr. P. 9014(c) states in relevant part: "The court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply" to contested matters.

[10]    The parties appear to agree that New York law governs Lucent's equitable claims. *See* Adelphia's Memorandum of Law in Support of Motion for Summary Judgment, ECF Docket No. 13633, p. 34 n. 12.

## C.  <u>Alter Ego and Other Equitable Claims</u>

The Court has held that factual issues exist under Section 17-303 that will require a trial

to examine the facts surrounding the conduct of ACC in connection with Devon and Lucent.  For

this reason, the Court does not grant summary judgment at this time on Lucent's additional

claims for (A) veil piercing and (B) "equitable theories of (1) contract implied-in-fact, (2) quasi-

contract / promissory estoppel; and (3) quantum meruit / unjust enrichment." [11]  Notwithstanding,

Adelphia's argument here is well-taken: The words "unless" and "only" in Section 17-303(a)

preclude liability against ACC under that section based upon a lesser showing than what is

provided for in Section 17-303.

This Court has previously held, in a contested matter between ACC and Devon, that "the

veil piercing doctrine can only be applied to the limited partnership with regard to the 'control'

element found in Section 17-303(a), and then only by third parties who dealt with the limited

partnership believing that the limited partner was in fact a de facto general partner of the limited

---

[11]     In a previous decision in this case, the Court set forth the elements of proof under the various equitable theories. *See In re Adelphia Commc'ns. Corp.*, 2007 WL 601452 at *5 nn. 3-5 (Bankr. S.D.N.Y. Feb. 20, 2007). Under New York law, the conduct of the parties may lead to the inference of a binding agreement:

> A contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct.  It is just as binding as an express contract arising from declared intention, since in the law there is no distinction between agreements made by words and those made by conduct.

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 582 (2d Cir. 2006) (quoting *Jemzura v. Jemzura*, 36 N.Y.2d 496, 503-04, 369 N.Y.S.2d 400, 330 N.E.2d 414 (N.Y. 1975)).

> The elements of promissory estoppel as a quasi-contract claim, are: (1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the promisee, and (3) injury sustained by the party asserting the estoppel by reason of his reliance.

*US West Fin. Servs., Inc. v. Tollman*, 786 F.Supp. 333, 343 (S.D.N.Y. 1992) (citing *Esquire Radio & Elecs., Inc. v. Montgomery Ward & Co.*, 804 F.2d 787, 793 (2d Cir. 1986).

> In order to make out a claim in quantum meruit, a plaintiff must establish (1) the performance of the services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.

*iWon, Inc. v. Ourhouse, Inc.*, 192 Misc.2d 1, 5, 744 N.Y.S.2d 791, 794-795 (N.Y. Sup. Ct. 2001).

partnership." *In re Adelphia Commc'ns Corp.* 2006 WL 687153, *20 (Bankr. S.D.N.Y. March 6,
2006). In that case, the Court rejected Devon's attempt at "reverse veil piercing" holding that
Devon, the limited partnership, had no standing under the Delaware Act and related
jurisprudence to impose liability on ACC, its limited partner. At that time, the Court observed
that it "has not been made aware of any authority that has imposed liability for partnership debt
on a limited partner outside the parameters set forth in the [Delaware Act]." *Id.* at *20.

To prevail on an alter ego theory of liability, a plaintiff must show that two entities (most
often, but not necessarily, corporations) operated as a single economic entity such that it would
be inequitable to uphold a legal distinction between them. *Fletcher v. Atex, Inc.*, 68 F.3d 1451,
1458 (2d Cir. 1995) (emphasis added). Among the factors to be considered in determining
whether a subsidiary and parent operate as a "single economic entity" are: (1) Whether the entity
was adequately capitalized for the corporate undertaking; (2) whether the entity was solvent; (3)
whether dividends were paid, appropriate records kept, officers and directors functioned
properly, and other formalities observed; (4) whether the dominant shareholder siphoned funds;
(5) and whether, in general, the entity simply functioned as a façade for the dominant
shareholder. *Id.* at 1458 (quoting Delaware standards). A "showing of fraud or wrongdoing is
not necessary under an alter ego theory, but the plaintiff must demonstrate an overall element of
injustice or unfairness." *Id.*

Although most veil-piercing cases have been decided in the context of corporations rather
than partnerships, there is nothing about the nature of a limited liability partnership (where the
limited partner is sometimes likened to a shareholder) that would preclude recourse to veil
piercing as an equitable remedy in appropriate circumstances. Furthermore, the Court finds
nothing in Section 17-303 that would preclude recourse to equitable remedies, including veil

- 28 -

piercing, against a limited partner in appropriate circumstances. *See C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 580 S.E.2d 806, 811 (Va. 2003) (interpreting Virginia Revised Uniform Limited Partnership Act and concluding that "there is simply no language in the Act that prohibits a court from piercing the veil of a limited partnership"). To hold otherwise would endorse "a wrong without a remedy." *See, e.g., Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical*, 2004 WL 415251, *2 n. 12 (Del. Ch. March 4, 2004) (noting that it was unclear under Delaware law whether veil piercing is an equitable right or an equitable remedy, but: "Equity will not suffer a wrong without a remedy. Thus, for purposes of this case, whether this [sic] veil piercing is an equitable right or an equitable remedy is a distinction without a difference.").

Because factual issues exist that will require a trial, it would be premature to hold that Lucent is not entitled to equitable relief under any theory. *See, e.g., In re Reasonover*, 236 B.R. 219, 231 (Bankr. E.D. Va. 1999) ("As with any equitable remedy, the court must consider the facts and circumstances of each particular case."). The fact that Lucent's veil piercing claim survives summary judgment is not likely to be availing to Lucent. This is because, if Lucent cannot meet its burden of proof on the Section 17-303 claim, Lucent almost certainly could not meet the higher standard of proof required to pierce the partnership veil. Certainly, veil piercing and other equitable remedies cannot be utilized as an "end run" around the proof required in Section 17-303 to permit a third party to prevail on a lesser showing.

## VI.  The Procedure at Trial

Adelphia has contended: "[T]here is no room within the plain language of [Section 17-303(a)] for Lucent's Equitable Claims or even its new breach of contract claim. <u>If Lucent cannot recover under Section 303(a), it cannot recover at all</u>." Adelphia's Reply Memorandum of Law, ECF Docket No. 13787, p. 31 (emphasis in original). For the efficiency of the parties and the

Court, the first stage of the trial will consider only Lucent's cause of action under Section 17-303.

At trial, Lucent will first have to show that ACC "participate[d] in the control of [Devon]" within the meaning of Section 17-303(a), proving conduct that is not within the acts and powers given a "safe harbor" under Section 17-303(b).  If Lucent can make the showing that ACC participated in control, Lucent must also demonstrate conduct by ACC that would support a reasonable belief that ACC was a general partner.  The first stage of the trial will not consider facts relating exclusively to a veil-piercing cause of action.  At the conclusion of the first stage of trial, the Court will rule on the Section 17-303 claim and consider whether, in view of that ruling, evidence on any other legal theory would provide additional or different relief to either Adelphia or Lucent.

### **Conclusion**[12]

Adelphia's motion for summary judgment is denied.  Counsel for Lucent is requested to submit an order consistent with this decision.

Dated: Poughkeepsie, New York
     September 25, 2007            /s/ Cecelia Morris
                                 CECELIA G. MORRIS
                                 UNITED STATES BANKRUPTCY JUDGE

---

[12]    As the Court explained at the September 12, 2007 hearing, in view of the most recent discovery dispute, this ruling is without prejudice to Adelphia to the extent that information on Lucent's trial exhibit lists that has not yet been turned over to Adelphia would have an impact.  Adelphia will be entitled to supplement its summary judgment motion and attempt to show that the new documents received from Lucent would compel a different outcome.